CITY OF CINCINNATI, Appellant,

v.

DIXON, Appellee.

[Cite as *Cincinnati v. Dixon* (1992), 78 Ohio App.3d 164.]

Court of Appeal of Ohio,
Hamilton County.

No. C–910107.

Decided Jan. 29, 1992.

*Fay D. Dupuis,* Acting City Solicitor, and *Mark C. Vollman,* for appellant. *Sandra Mendel Furman,* for appellee.

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, including the transcript of proceedings before the Cincinnati Civil Service Commission, the briefs and the arguments of counsel.

The city of Cincinnati appeals to this court from the order of the court of common pleas which affirmed a decision of the Cincinnati Civil Service Commission. The decision of the commission at issue ordered Paulette Dixon reinstated to the position of Meter Reader for the Cincinnati Water Works, the position from which she was demoted because of her failure to wear a standard uniform. Because we conclude that the appointing authority lacked a reason grounded in the applicable statute to demote Dixon, we affirm the order of the court of common pleas.

I

In December 1988, a promotional exam was given for the position of Meter Reader in the Cincinnati Water Works. Among those taking the exam was Paulette Dixon, who was employed at that time by the Water Works. In March 1989, Dixon interviewed for the meter reader job. After being told by Water Works management that meter readers are required to wear a uniform that includes trousers, Dixon declined the job. She was again offered the job in June 1989, and this time Dixon accepted the job.

Dixon and two others started work as meter readers on July 9, 1989. Soon thereafter they were issued the standard uniform, including trousers, and were told to wear them during field training. On the first day of field training, Dixon reported to work wearing the uniform shirt and a skirt. She

was sent home to change into the uniform trousers. The next day she was directed to report to work in the standard uniform to continue field training.

Dixon requested permission to continue field training wearing the standard uniform but substituting a navy blue uniform skirt for the standard navy blue trousers. She explained to Water Works management that the wearing of trousers by a woman offended her religious convictions. Dixon is a member of the House of God, Holy Church of the Living God, Ground of the Truth, House of Prayer for All People, Incorporated. According to the tenets of this church, women are not permitted to wear men's apparel, including trousers.

Citing safety reasons, Water Works management refused to allow Dixon to wear a skirt while working as a meter reader. A standard form 32, which provides notice to the employees of Cincinnati of disciplinary actions, layoff, or displacement, was processed specifying that Dixon was being demoted to the position of Customer Relations Representative because she failed probation. Attached was a standard form 34, a Cincinnati Performance Report, which indicated that Dixon's quality and quantity of work was inadequate and included documentation of Dixon's refusal to wear trousers.

Dixon appealed her demotion to the Cincinnati Civil Service Commission pursuant to R.C. 124.34. A hearing was held before the commission at which Dixon was represented by an attorney. During the hearing, Dixon's attorney argued that the Water Work's employment action constituted religious and sex discrimination and that no genuine safety rationale supported the Water Work's requirement that meter readers wear trousers.

Various witnesses testified about the safety rationale advanced by the Water Works for its trousers requirement. Ciro Farino, Superintendent of Commercial Affairs for the Cincinnati Water Works, testified that trousers reduce the possibility that meter readers will trip as they climb into meter pits, and protect their skin from exposure to insects, weeds and other hazards. He identified a letter, prepared by a Water Works official at the time of Dixon's demotion, documenting the safety rationale for the trousers requirement. The letter includes the safety advantages discussed by Farino, and also claims that trousers protect legs from exposure to acids, alkalis, jagged edges, protruding objects, and avoid the possibility that a skirt would get entangled in machinery. Frank Bellissemo, the immediate supervisor of the meter readers for the Water Works, added that trousers also help protect the meter readers from dog bites.

Michael Gunn, the assistant to the city manager in charge of employee safety, risk management, and employee health services, testified that, in his opinion, trousers protect meter readers from injury to their skin and provide

for the mobility necessary to do the job. He concluded that the wearing of skirts would prove hazardous to meter readers.

Anita Boseman, a former meter reader, testified that, in her opinion, a meter reader could safely perform her job while wearing a skirt like the one Dixon wanted to wear.

Audricia Brooks testified that she had worked at one time as a community health nurse. In that capacity, she explained, she was exposed to many of the hazards encountered by meter readers. In her work she sometimes descended into basements, climbed fences, navigated unstable stairways, and was exposed to weeds, but she was not required to wear trousers.

After hearing this and other testimony and reviewing exhibits offered by both an assistant city solicitor and Dixon's attorney, the civil service commission issued a written decision in which it ordered Dixon reinstated to the position of Water Meter Reader. The commission concluded that Dixon's demotion offended her right to freely practice her religion, as protected by the federal Constitution and the Civil Rights Act of 1964. In reaching this decision, the commission found that:

"With regard to the question of whether the requirement of trousers is reasonable, the City recited a list of hypothetical and possible hazards risked by one wearing a skirt rather than trousers. It is the opinion of the Commission that these allegations were not persuasive, and that wearing a neat and conservative skirt as alleged by the appellant would constitute a reasonable accommodation as required by the [federal civil rights] statute. It is our opinion that the arbitrary requirement of trousers in this case is not a reasonable means of promoting a legitimate public interest."

Cincinnati and Scott Johnson, the City Manager and the appointing authority with respect to Dixon's position, appealed the decision of the civil service commission to the court of common pleas pursuant to R.C. Chapters 2505 and 2506. The court found that no reason grounded in the civil service statutes was alleged or proven by the city to support Dixon's demotion, and that absent such a statutory reason, the demotion must fail. The court further concluded that the commission's findings, including the arbitrariness of the trousers requirement as applied to Dixon and its unpersuasive safety rationale, were supported by the preponderance of reliable, probative, and substantial evidence contained in the record. The court of common pleas therefore affirmed the decision of the civil service commission.

## II

In its single assignment of error asserted on appeal to this court, Cincinnati claims that the court of common pleas erred when it affirmed the decision of

the civil service commission. The city argues that the commission lacked jurisdiction to hear a claim that an employment decision violated an employee's civil rights arising from the Civil Rights Act of 1964, Section 2000e *et seq.*, Title 42, U.S.Code or R.C. Chapter 4112. The city further claims that Dixon failed to establish a violation of her civil rights and that under civil service law, Dixon's insubordination justified her demotion.

The jurisdictional issue raised by the city can be resolved by analyzing the authority granted to municipal civil service commissions by the civil service statutes of this state. R.C. 124.40 authorizes a municipal civil service commission to exercise, within the municipality, the authority granted to the State Personnel Board of Review. The State Personnel Board of Review is authorized by R.C. 124.03(A) to hear appeals from the final decisions of appointing authorities regarding various employment decisions, including the reduction in pay or position of an employee in the classified civil service of the state. The Ohio Supreme Court has concluded that the State Personnel Board of Review "has the authority to modify the judgment of an appointing authority where it acts arbitrarily, unreasonably, or unlawfully or where its decision is improper or unnecessary." *Jones v. Franklin Cty. Sheriff* (1990), 52 Ohio St.3d 40, 43, 555 N.E.2d 940, 944. Consistent with R.C. 124.40, Article V of the Charter of the city of Cincinnati establishes the Cincinnati Civil Service Commission. The commission is authorized by the charter to exercise its powers in conformance with state civil service laws.

R.C. 124.40 further provides that "[t]he procedure applicable to reductions, suspensions, and removals, as provided for in section 124.34 of the Revised Code, shall govern the civil service of cities." R.C. 124.34 is the statute under which the appeal to the Cincinnati Civil Service Commission was taken in the case at bar. This statute provides, in relevant part:

"The tenure of every officer or employee in the classified service of the * * * cities * * * shall be during good behavior and efficient service and no such officer or employee shall be reduced in pay or position, suspended, or removed, except * * * for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections or the rules of the director of administrative services or the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance, or nonfeasance in office. * * *

"In any case of reduction, suspension of more than three working days, or removal, the appointing authority shall furnish such employee with a copy of the order of reduction, suspension, or removal, which order shall state the reasons therefor. Such order shall be filed with * * * the commission * * *.

"Within ten days following the filing of such order, the employee may file an appeal, in writing, with the * * * commission. In the event such an appeal is filed, the * * * commission shall forthwith notify the appointing authority and shall hear, or appoint a trial board to hear, such appeal within thirty days from and after its filing with the * * * commission and it may affirm, disaffirm, or modify the judgment of the appointing authority."

 After reviewing this statute and the relevant rules of the Cincinnati Civil Service Commission which are consistent with this statutory provision, we agree with the appellant's contention that the commission is not the appropriate body to resolve Dixon's allegation that her demotion constituted religious discrimination. As provided by statute, the commission's power to review the final decision of an appointing authority with respect to an employment decision is broad. The commission, however, is a creation of the legislature and its powers are constrained to those provided in the relevant statutes. *Hemsteger v. Civ. Serv. Comm.* (Oct. 16, 1991), Hamilton App. No. C–900562, unreported, 1991 WL 209921 (the jurisdiction of a municipal civil service commission is limited to those areas provided by statute); *Green v. W. Reserve Psychiatric Habilitation Ctr.* (1981), 3 Ohio App.3d 218, 3 OBR 248, 444 N.E.2d 442 (the State Personnel Board of Review's jurisdiction and powers are limited to those conferred by statute); cf. *State ex rel. Ashcraft v. Indus. Comm.* (1984), 15 Ohio St.3d 126, 15 OBR 276, 472 N.E.2d 1077 ("The Industrial Commission is a creature of statute and as such, is limited to the powers conferred on it by statute."). Pursuant to R.C. 124.34, the commission's power is restricted to determining whether the appointing authority's employment action at issue is consistent with the tenure provisions provided in the statute (for example, whether an employee was discharged because of incompetency, inefficiency, dishonesty, etc.). The government agencies given the statutory authority to determine whether an employment action constitutes religious discrimination are the Ohio Civil Rights Commission pursuant to R.C. Chapter 4112 and the Equal Employment Opportunity Commission, in an appropriate case, pursuant to Section 2000e *et seq.*, Title 42, U.S.Code.

 Notwithstanding its statutory limitations, the authority of the Cincinnati Civil Service Commission is broad enough to encompass a review of the employment action at issue in the case at bar. Dixon appealed to the commission from a job reduction pursuant to R.C. 124.34. The conclusion that follows from the commission's finding that the Water Works' trousers requirement is arbitrary and unreasonable as applied in this case is that Dixon's job reduction was not properly anchored in one of the reasons for such an

employment action provided in R.C. 124.34.[1] During the commission's hearing, conflicting evidence was presented as to whether the Water Works' requirement that meter readers wear trousers as part of their uniform serves a legitimate safety purpose. Giving due deference to the commission's resolution of these evidentiary conflicts, we conclude that the commission's finding that the trousers requirement as applied to Dixon is arbitrary, unreasonable, and fails to serve a legitimate public interest is supported by the preponderance of substantial, reliable, and probative evidence. See *Harvey v. Civ. Serv. Comm. of Cincinnati* (1985), 27 Ohio App.3d 304, 27 OBR 360, 501 N.E.2d 39 (discussing standard of review). We agree with the conclusion of the court of common pleas that lacking a statutory basis, the demotion cannot stand. The decision of the court of common pleas which affirmed the decision of the Cincinnati Civil Service Commission is affirmed.

*Judgment affirmed.*

DOAN, P.J., KLUSMEIER and HILDEBRANDT, JJ., concur.

---

1. The documentation supporting Dixon's demotion and the testimony presented to the commission reflect that the sole reason given for Dixon's demotion was her insistence on wearing a skirt. The court of common pleas found, and we agree, that it is too late for the city to claim that the demotion was based on insubordination. We further agree with that court's conclusion that neither the labor-management agreement between the city and the American Federation of State, County and Municipal Employees nor Cincinnati Municipal Code Section 308–55 prohibits a meter reader from wearing a skirt in place of trousers as part of the meter reader uniform.