DWORNING, APPELLEE, *v.* CITY OF EUCLID ET AL., APPELLANTS.

[Cite as *Dworning v. Euclid*, 119 Ohio St.3d 83, 2008-Ohio-3318.]

(No. 2007–0307—Submitted January 22, 2008—Decided July 8, 2008.)

LANZINGER, J.

{¶ 1} In this discretionary appeal, we are asked to determine whether a public employee who alleges discriminatory practices must first exhaust the public employer's administrative remedies before pursuing the civil action allowed by R.C. Chapter 4112. We hold that the employee need not do so.

### Case Background

{¶ 2} Appellee Michael Dworning was employed by appellant city of Euclid for almost 30 years as a firefighter and was serving as fire chief at the time of his separation from employment. Under Section 7, Article V, Charter of the City of Euclid, the fire chief is a member of the classified service. On March 4, 2004, the mayor of Euclid sent a letter to the Euclid Civil Service Commission, stating that Dworning was terminated from his position effective February 20, 2004. A few days later, the mayor sent another letter to the commission, indicating that Dworning had submitted a retirement notice on March 8, 2004, effective as of February 20, 2004.

{¶ 3} Dworning did not file an appeal with the commission to contest his employment termination. Instead, he instituted this action on October 26, 2004, against appellants, the city of Euclid, Thomas Cosgriff, Jim Slivers, and two John Does. The complaint alleged claims of discrimination based on disability, aiding unlawful discriminatory practices, invasion of privacy through disclosure of privileged medical information, defamation, breach of employment contract, and civil conspiracy.

{¶ 4} Appellants filed a motion for summary judgment, arguing that Dworning's complaint should be dismissed in its entirety because he failed to exhaust his administrative remedies when he did not appeal his alleged constructive discharge to the commission. The trial court granted appellants' motion for summary judgment on this ground.

{¶ 5} The Eighth District Court of Appeals reversed. The appellate court concluded:

{¶ 6} "In the end, we are left with choosing between a judge-made rule of convenience over a clearly defined statutory right. We continue to adhere to the fundamental principles supporting the exhaustion doctrine. In the main, they have the salutary effect of promoting judicial economy and efficiency. We cannot however, apply a doctrine of 'judicial convenience' when the General Assembly has so very clearly provided for a right of private action with the intent that it has priority over other laws. The remedial purposes of the discrimination laws are not served by requiring exhaustion of administrative remedies. We therefore hold that a separated civil service employee who has administrative remedies available to him by way of a civil service appeal is not required to exhaust those remedies as a predicate to filing a private disability discrimination action under R.C. * * * 4112.99." *Dworning v. Euclid,* 8th Dist. No. 87757, 2006-Ohio-6772, 2006 WL 3743822, ¶ 65.

{¶ 7} We accepted this case as a discretionary appeal. Appellants contend that to sustain the utility of civil service procedures to redress alleged employment wrongs in the public employment setting, this court should require public employees to exhaust internal administrative remedies before launching premature, expansive, and potentially unnecessary employment lawsuits against public employers. Dworning responds that because the statutory language of R.C. Chapter 4112 is clear and unambiguous, we should not allow a municipality to defeat the chapter's purpose by requiring a public employee to exhaust internal administrative remedies before filing a civil action against the employer. We agree with Dworning.

## Legal Analysis

{¶ 8} As the Eighth District correctly noted, this case involves the interaction between two public policies: the policy requiring the exhaustion of administrative remedies and the policy against discrimination in an employment setting, which is codified in R.C. Chapter 4112. Each policy will be analyzed before we determine their relationship to each other.

### *Exhaustion of Administrative Remedies*

{¶ 9} It is a well-established principle of Ohio law that a party seeking relief from an administrative decision must pursue available administrative remedies before pursuing action in a court. *Noernberg v. Brook Park* (1980), 63 Ohio St.2d 26, 29, 17 O.O.3d 16, 406 N.E.2d 1095, citing *State ex rel. Lieux v. Westlake* (1951), 154 Ohio St. 412, 43 O.O. 343, 96 N.E.2d 414. We have stated, " 'Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may

have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.' *Weinberger v. Salfi* (1975), 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522. The purpose of the doctrine ' * * * is to permit an administrative agency to apply its special expertise * * * in developing a factual record without premature judicial intervention.' *Southern Ohio Coal Co. v. Donovan* (C.A.6, 1985), 774 F.2d 693, 702. The judicial deference afforded administrative agencies is to ' * * * "prepare the way, if the litigation should take its ultimate course, for a more informed and precise determination by the Court * * *."' *Ricci v. Chicago Mercantile Exchange* (1973), 409 U.S. 289, 306, 93 S.Ct. 573, 582, 34 L.Ed.2d 525." *Nemazee v. Mt. Sinai Med. Ctr.* (1990), 56 Ohio St.3d 109, 111–112, 564 N.E.2d 477.

{¶ 10} The exhaustion doctrine is not without exception. For instance, when there is a judicial remedy that is intended to be separate from the administrative remedy, the requirement of exhaustion of administrative remedies does not apply. *Basic Distrib. Corp. v. Ohio Dept. of Taxation* (2002), 94 Ohio St.3d 287, 290, 762 N.E.2d 979.

{¶ 11} The failure to exhaust administrative remedies is not a jurisdictional defect but is rather an affirmative defense, if timely asserted and maintained. *Jones v. Chagrin Falls* (1997), 77 Ohio St.3d 456, 674 N.E.2d 1388, syllabus. In this case, appellants asserted the defense of failure to exhaust administrative remedies in their answer and then sought summary judgment based on the defense.

{¶ 12} Pursuant to the home rule powers granted to municipalities by Section 3, Article XVIII of the Ohio Constitution, the city of Euclid has adopted a charter that gives the mayor the power to remove any officer or employee of the city. Section 2(D), Article IV, Euclid Charter. That power is subject to the commission's duty under Section 7, Article V, Euclid Charter, to hear appeals from a decision by the mayor to remove an employee.

{¶ 13} Pursuant to R.C. 124.40, the commission has the authority to promulgate rules not inconsistent with R.C. Chapter 124. The Local Rules of the Civil Service Commission provide:

{¶ 14} "8.2 DISCHARGE OR REDUCTION IN RANK OR COMPENSATION. No person in the classified service shall be discharged or reduced in rank or compensation without being notified, in writing, by the Appointing Authority or officer of the reasons of such discharge or reduction.

{¶ 15} "8.3 REQUEST FOR HEARING UPON SUSPENSION, DISCHARGE OR REDUCTION. Any employee, officer or holder of a position in the classified service may request a hearing before the Appointing Authority to appeal the notice of suspension, discharge or reduction in rank or compensation.

{¶ 16} "(A) Time Requirement for Defense of Charge. Any employee, officer, or holder of a position in the classified service requesting a hearing before the Appointing Authority on discharge or reduction in rank or compensation of such employee, officer, or holder must make such request within ten days of receiving notice from the appointing officer of discharge or reduction.

{¶ 17} "(B) Time Schedule for Hearing before Appointing Authority. The appointing officer shall, within ten days of receiving a request by an employee for a hearing on the discharge or reduction, set the date for such hearing.

{¶ 18} "8.4 APPEAL TO COMMISSION. In the event of an adverse decision made or affirmed against an employee in the appeal to the Appointing Authority or officer, said employee may file an appeal with the commission. Such appeal for the Commission must be filed in writing within ten days after the date of the adverse decision.

{¶ 19} "(A) Time Schedule for Hearing Before the Commission. Upon receipt of notice of appeal, the Commission shall forthwith notify the Appointing Authority or officer and shall have a hearing on the issue no later than thirty days from the filing of the appeal with the Commission.

{¶ 20} "(B) Decision of Commission. The Commission, upon hearing testimony, may affirm, disaffirm or modify the decision or judgment of the Appointing Authority.

{¶ 21} "(C) Appeal of Commission Decision. An employee, upon receiving an adverse decision from the Commission, may appeal such decision to the Court of Common Pleas of Cuyahoga County, pursuant to the Ohio Revised Code."

{¶ 22} Appellants argue that Dworning was required to appeal to the commission before he could file a civil lawsuit. Dworning asserts that the plain language of R.C. Chapter 4112 and the purposes behind its adoption do not require him to exhaust his administrative remedies.

## R.C. Chapter 4112

{¶ 23} In *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 133, 543 N.E.2d 1212, we explained that "R.C. Chapter 4112 is comprehensive legislation designed to provide a wide variety of remedies for employment discrimination in its various forms." R.C. 4112.02 provides:

{¶ 24} "It shall be an unlawful discriminatory practice:

{¶ 25} "(A) For any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶ 26} It is also an unlawful discriminatory practice for "any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter or any order issued under it, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice." R.C. 4112.02(J).

{¶ 27} R.C. Chapter 4112 is remedial legislation designed to prevent and eliminate discrimination. R.C. 4112.08 states: "This chapter shall be construed liberally for the accomplishment of its purposes, and any law inconsistent with any provision of this chapter shall not apply." See also *Helmick*, 45 Ohio St.3d 131, 133, 543 N.E.2d 1212.

{¶ 28} When enacted in 1959, R.C. Chapter 4112 established an administrative scheme in which complaints of discrimination were presented to the Ohio Civil Rights Commission ("OCRC"). Am.S.B. No. 10, 128 Ohio Laws 12, 16–17. Access to the courts was limited; a party aggrieved by a final order of the OCRC could seek judicial review of that order. Id. at 18–19. The first private cause of action for discrimination was created in 1969 when the General Assembly allowed victims of housing discrimination to file civil actions. Am.H.B. No. 432, 133 Ohio Laws, Part II, 2170, 2181–2182. Shortly thereafter, private causes of action were granted for victims of credit discrimination, Am.Sub.H.B. No. 151, 136 Ohio Laws, Part I, 1589, 1595–1596, and for victims of age discrimination, Am.H.B. No. 230, 138 Ohio Laws, Part I, 2268, 2275.

{¶ 29} In 1987, the General Assembly amended R.C. 4112.99 to provide: "Whoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief." Am.H.B. No. 5, 142 Ohio Laws, Part I, 1761, 1778. In *Elek v. Huntington Natl. Bank* (1991), 60 Ohio St.3d 135, 136, 573 N.E.2d 1056, we declared that "[a] plain reading of this section yields the unmistakable conclusion that a civil action is available to remedy any form of discrimination identified in R.C. Chapter 4112."

{¶ 30} After the 1987 amendment, one who claims that discrimination has occurred has two avenues of recovery under R.C. Chapter 4112: administrative relief through the OCRC or a civil suit filed in a court of common pleas. In *Elek*, we allowed an individual to file a civil action to remedy discrimination without having invoked the administrative remedies available through the OCRC. 60 Ohio St.3d at 138, 573 N.E.2d 1056. We have also held that the filing of a charge of discrimination with the OCRC does not preclude a person from filing a civil action under R.C. 4112.99. *Smith v. Friendship Village of Dublin, Ohio, Inc.* (2001), 92 Ohio St.3d 503, 506, 751 N.E.2d 1010.

*Which Public Policy Controls?*

{¶ 31} The Eighth District expressed concern that applying the exhaustion doctrine to discrimination claims would limit, and in some circumstances supersede, the private right of action under R.C. 4112.99. The court of appeals also noted that a claim for disability discrimination could not be considered by the city's civil service commission and that the civil service commission could not provide the same relief, such as money damages or injunctive relief, that would be available in a civil action. Relying on this court's holding in *Elek* and *Friendship Village* that R.C. 4112.99 is to be liberally construed and that R.C. 4112.08 precludes any law that is inconsistent with the provisions of R.C. Chapter 4112, the Eighth District concluded that the remedial nature of R.C. 4112.99 prevails over the exhaustion of administrative remedies doctrine.

{¶ 32} Appellants attempt to distinguish *Elek* and *Friendship Village* by pointing out that those decisions addressed the administrative remedies offered by R.C. Chapter 4112 rather than the "internal administrative remedies" that public employers are required to provide to classified civil servants. Appellants contend that this court's decision in *Nemazee,* which required an employee to exhaust all internal administrative remedies provided in his employment contract prior to suing in a court of common pleas, is controlling.

{¶ 33} We conclude that *Nemazee* is readily distinguishable. First, the employee there did not claim discrimination. *Nemazee,* 56 Ohio St.3d at 110, 564 N.E.2d 477. Second, that employee had a contract that gave him the right to a hearing following any adverse disciplinary action. Id. Finally, the holding in *Nemazee* was based upon this court's opinions and case law from other jurisdictions that courts should defer to the judgment of hospital administrators in matters relating to staffing decisions. Id. at 113, 114, 564 N.E.2d 477.

{¶ 34} Appellants argue that requiring public employees to exhaust their administrative remedies is consistent with the mandate of R.C. Chapter 4112. They view the administrative exhaustion requirement as simply a precondition, rather than an obstacle, to filing suit. But certain discrimination claims, such as age discrimination under R.C. 4112.02(N), must be filed within 180 days.[1] Furthermore, discrimination may not be immediately evident. An employee might not become aware of the public employer's discriminatory act (such as hiring a younger worker or reinstating a male but not a female employee) within the ten-day period allowed for an appeal to the city's civil service commission. The employee would then be prohibited from pursuing a discrimination claim

---

1.  Appellants argue that Dworning's ability to file a civil lawsuit would not be hampered by requiring him to appeal to the civil service commission, because his claim is for disability, not for age discrimination.

under R.C. 4112.99 unless he or she had already filed an administrative appeal. We will not permit a rule of judicial convenience to frustrate R.C. Chapter 4112's goals of eliminating discrimination and providing redress to its victims. R.C. 4112.08 forbids such a result.

{¶ 35} The purposes of the doctrine requiring exhaustion of administrative remedies also would not be furthered if applied in this situation. Appellants extensively argue that an appeal to the civil service commission is designed to afford due process to classified civil servants and to protect their property rights in continued employment while allowing a public employer to correct its own mistakes. We do not dispute this point. But permitting a public employee to file a discrimination claim without first appealing to the civil service commission does not stop a public employer from correcting its own mistakes. The discovery process of a lawsuit brings facts to light. A public employer is always free to enter into a settlement agreement if it realizes that an error has been made.

{¶ 36} We do not agree with appellants' contention that a discrimination claim arising from a public employee's discharge is encompassed within the broader determination of whether the discharge was for "just cause." We have previously recognized that "the issues involved in a civil service appeal before either the State Personnel Board of Review or a municipal civil service commission and an unlawful discriminatory practice charge before OCRC are different." *Whitehall ex rel. Wolfe v. Ohio Civ. Rights Comm.* (1995), 74 Ohio St.3d 120, 122, 656 N.E.2d 684. Two courts of appeals have also determined that a civil service commission's review of an employment action does not necessarily resolve the issue of discrimination against a public employee. *Cincinnati v. Dixon* (1992), 78 Ohio App.3d 164, 604 N.E.2d 193; *Jackson v. Franklin Cty. Animal Control Dept.* (Oct. 6, 1987), 10th Dist. No. 86AP–930, 1987 WL 18210.

{¶ 37} Civil service commissions are creatures of statute. See R.C. 124.40. Their authority is limited to those areas provided by statute. A civil service commission is not authorized to handle discrimination claims by either R.C. 124.40 or 124.34 or the commission's local rules. See *Dixon*, 78 Ohio App.3d at 169, 604 N.E.2d 193 (a municipal civil service commission is not the appropriate body to resolve a public employee's allegation of religious discrimination). Thus, the experience or expertise of the city's civil service commission would not be of any benefit to the parties or the courts during the judicial review of a claim of discrimination, and an appeal to the commission would not necessarily create a record that would be adequate for such a review.

{¶ 38} The General Assembly has demonstrated that it is aware that employees may have other remedies available to them for particular types of employment violations. R.C. 4112.14 provides in part:

{¶ 39} "(B) Any person aged forty or older who is discriminated against in any job opening or discharged without just cause by an employer * * * may institute a civil action against the employer in a court of competent jurisdiction.   * * *

{¶ 40} "(C) The cause of action described in division (B) of this section and any remedies available pursuant to sections 4112.01 to 4112.11 of the Revised Code shall not be available in the case of discharges where the employee has available to the employee the opportunity to arbitrate the discharge or where a discharge has been arbitrated and has been found to be for just cause."

{¶ 41} Thus, for certain age discrimination claims, the General Assembly has expressed its intent to prefer arbitration over other remedies when arbitration is available.   The General Assembly, however, has not manifested a similar intent for claims of other forms of discrimination.   We agree with the Eighth District that "unless and until the General Assembly expressly incorporates an exhaustion requirement into R.C. Chapter 4112, we have no basis for requiring it as a matter of course to those workers who have available civil service remedies." *Dworning*, 2006-Ohio-6772, 2006 WL 3743822, at ¶ 58.

{¶ 42} Finally, appellants also misconstrue the Eighth District's statement that its "holding does not apply to employment relationships defined by contract, whether private or by way of a collective bargaining agreement, which set forth agreed upon disciplinary procedures, regardless of whether the right to invoke those procedures is couched in discretionary language." Id. at ¶ 58.   An employee or employee's agent who bargains with an employer relinquishes certain rights to obtain other benefits.   Therefore, an employee who has entered into an employment contract may give up the right to immediately file a civil action for discrimination in a court and instead agree to appeal to a civil service commission or other administrative agency.

## Conclusion

{¶ 43} The protection of an individual's right to pursue private remedies is too central an aspect of Ohio's commitment to nondiscrimination to be limited to, or delayed by, an administrative process.   We hold that a public employee alleging employment discrimination in violation of R.C. Chapter 4112 need not exhaust the administrative remedy of appeal to a civil service commission before pursing the civil action allowed in R.C. 4112.99.   The judgment of the Cuyahoga County Court of Appeals is affirmed.

Judgment affirmed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

Thorman & Hardin–Levine Co., L.P.A., Christopher P. Thorman, Peter Hardin–Levine, and Jon L. Lindberg, for appellee.

Chris Frey; Millisor & Nobil Co., L.P.A., Richard A. Millisor, and William E. Blackie, for appellant city of Euclid.

Elfvin & Besser, L.P.A., and Barbara Kaye Besser, for appellants James Slivers and Thomas Cosgriff.

Stephen L. Byron and John Gotherman, urging reversal for amicus curiae Ohio Municipal League.

Nancy Hardin Rogers, Attorney General, William P. Marshall, Solicitor General, Christopher R. Geidner and Robert J. Krummen, Deputy Solicitors, and Duffy Jamieson, Assistant Attorney General, urging affirmance for amicus curiae state of Ohio.

Fortney & Klingshirn and Neil E. Klingshirn; Gittes & Schulte, Frederick M. Gittes, and Jeffrey P. Vardaro, urging affirmance for amici curiae Ohio Employment Lawyers' Association, Ohio NOW Legal Education Defense Fund, Committee Against Sexual Harassment, Ohio State Legal Services Association, and Columbus Branch of the Ohio NAACP.