COLEMAN et al., Appellants,

v.

PORTAGE COUNTY ENGINEER, Appellee.

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 2010–P–0016.

Decided Dec. 17, 2010.

---

34

Darrell D. Maddock, for appellants.

Mazanec, Raskin, Ryder & Keller Co., L.P.A., John T. McLandrich, and Frank H. Scialdone, and Tami Z. Hannon, for appellee.

CYNTHIA WESTCOTT RICE, Judge.

{¶ 1} Appellants, Robert Coleman and Barbara Coleman, appeal the judgment of the Portage County Court of Common Pleas granting appellee Portage County Engineer's Civ.R. 12(B)(6) motion to dismiss their complaint for failure to state a claim on which relief can be granted. For the reasons that follow, we affirm in part and reverse in part the judgment, and remand the cause.

{¶ 2} Appellants filed their complaint on November 9, 2009. They alleged that they own and reside in the home located at 4087 Sabin Drive in Rootstown, Ohio. Their property has flooded numerous times beginning in 1982, resulting in damage to their home and its contents.

{¶ 3} Appellants alleged that the flooding is caused by appellee's storm-water discharging system. They alleged that appellee collects drainage water from drainage ditches along State Route 44 in Rootstown and discharges the water through a piping system that runs across the property owned by the Rootstown Local School District, which is adjacent to appellants' property. The piping system is unable to accommodate the drainage water, causing it to overflow from culverts located in front of and behind appellants' residence.

{¶ 4} Appellants alleged that in June 1982, their property flooded when water overflowed from the culvert at the corner of their property. Water infiltrated their residence and damaged their furniture. In June 1989, appellants' property flooded again when the front and back culverts overflowed. Water came into the back of their residence, destroying their carpeting and furniture. In May 2003, the culvert in the back of appellants' property flooded, causing water to cross the backyard and flow into the back of their residence. In August 2005, the culvert overflowed again, resulting in flooding in the schoolyard. The culvert was unable to accommodate the water, causing appellants' property to flood. Most recently, in June 2009, appellants' property flooded again. Water infiltrated a bedroom wall, causing one foot of standing water along the back wall inside the residence. Appellants sustained significant property damage, including the destruction of the carpeting in four rooms.

{¶ 5} Appellants alleged that their property will continue to flood because appellee negligently constructed a water-drainage system that does not properly discharge water or prevent it from flooding their property. They also alleged that appellee has negligently failed to maintain the water-piping system, resulting in the repeated flooding of their property.

{¶ 6} Appellants alleged that they notified appellee of the flooding on their property on numerous occasions, but that appellee has refused and continues to refuse to abate the nuisance or to "resolve the repetitive flooding" of their property.

{¶ 7} Appellants' complaint asserts two claims. In Count I, they alleged that appellee was negligent in designing, constructing, and maintaining the water-piping system that collects water and discharges it onto their property, and as a result, they have sustained damages in an amount to be determined at trial.

{¶ 8} In Count II, appellants alleged that they are entitled to an injunction prohibiting appellee from continuing to use the county's storm-water discharging system in a manner that makes their property subject to flooding and requiring him to "abate the nuisance" by installing adequate pipes and culverts to prevent continued flooding and damage to their property.

{¶ 9} Prior to appellee's filing an answer or the exchange of discovery between the parties, on December 30, 2009, appellee filed a motion to dismiss appellants' complaint pursuant to Civ.R. 12(B)(6), arguing that appellants' complaint failed to state a claim on which relief could be granted. Appellants filed their brief in opposition. On February 19, 2010, the trial court entered judgment granting appellee's motion. The court dismissed with prejudice appellants' claim for negligent planning, design and construction of the pipeline in Count I based on political-subdivision immunity. The court dismissed without prejudice appellants' claim for negligent maintenance of the pipeline in Count I and their claim for an injunction in Count II based on appellants' failure to exhaust their administrative remedies. Finally, the court dismissed with prejudice appellants' claims arising before June 17, 2009, on the ground that they were barred by the applicable statute of limitations.

{¶ 10} Appellants appeal the trial court's judgment, asserting three assignments of error. Appellee also raises one cross-assignment of error for our consideration. For their first assigned error, appellants contend:

{¶ 11} "The trial court committed reversible error in dismissing plaintiffs-appellants [sic] claims [sic] for negligent planning, design and construction of the pipeline with prejudice asserting that the defendant-appellee is immune from these claims."

{¶ 12} "A motion to dismiss for failure to state a claim upon which relief can be granted is governed by Civ.R. 12(B)(6). When considering a motion to dismiss pursuant to this rule, a court must accept the factual allegations set forth in the complaint as true." *Citibank, N.A. v. Siciliano*, 11th Dist. No. 2003–T–0026, 2004-Ohio-1528 [2004 WL 612878], at ¶ 6. Further, "the plaintiff shall be granted all reasonable inferences derived from the allegations of the complaint." Id. Therefore, the inquiry associated with a Civ.R. 12(B)(6) motion to dismiss focuses on the specific allegations contained in the complaint without reference to external documents or facts. Id.

{¶ 13} This court has held that an appellate court reviews a judgment granting or denying a Civ.R. 12(B)(6) motion to dismiss de novo. *Goss v. Kmart Corp.*, 11th Dist. No. 2006–T–0117, 2007-Ohio-3200, 2007 WL 1810523, at ¶ 17. Generally, "[a] motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 548, 605 N.E.2d 378. " '[B]efore the court may dismiss the complaint, " * * * it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." ' " Id., quoting *State ex rel. Alford v. Willoughby* (1979), 58 Ohio St.2d 221, 223–224, 12 O.O.3d 229, 390 N.E.2d 782, quoting

*O'Brien v. Univ., Community Tenants Union* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753.

{¶ 14} In *Frazier v. Kent,* 11th Dist. Nos. 2004–P–0077 and 2004–P–0096, 2005-Ohio-5413, 2005 WL 2542940, ¶ 20, this court addressed the appropriate analysis upon the assertion of a defense based on political-subdivision immunity as follows:

{¶ 15} "R.C. Chapter 2744 sets forth a three tiered analysis for determining a political subdivision's immunity from liability. *Greene Cty. Agricultural Soc. v. Liming,* (2000), 89 Ohio St.3d 551, 556, 2000-Ohio-486 [733 N.E.2d 1141]. First, R.C. 2744.02(A)(1) codifies the general rule of sovereign immunity, viz., that 'a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.' However, this general rule is limited by R.C. 2744.02(B), which sets forth five instances in which a political subdivision is not immune. Hence, the second tier of the analysis requires a court to determine whether any of the exceptions under R.C. 2744.02(B) apply. Finally, if a political subdivision is exposed to liability through the application of R.C. 2744.02(B), a court must consider whether the political subdivision could legitimately assert any of the defenses or immunities under R.C. 2744.03. See, e.g., *Greene Cty. Agricultural Soc.,* supra, at 557 [733 N.E.2d 1141]."

{¶ 16} We begin our analysis by determining whether the Portage County Engineer is entitled to political-subdivision immunity under R.C. Chapter 2744. In *Lambert v. Clancy,* 125 Ohio St.3d 231, 2010-Ohio-1483, 927 N.E.2d 585, the Supreme Court of Ohio held that where "the allegations contained in the complaint are directed against the office of the political subdivision, the office-holder was sued in his official capacity rather than in his individual or personal capacity. [Further,] the three-tiered political-subdivision-immunity analysis set forth in R.C. 2744.02, and not the employee-immunity provision of R.C. 2744.03(A)(6), is to be applied in such a circumstance." Id. at ¶ 1. Further, the immunity granted by statute to a political subdivision is also extended to the political subdivision's departments, agencies, and offices, which implement the duties of the political subdivision. Id. at ¶ 8. In the instant case, because the allegations in the complaint are directed against the office of the Portage County Engineer, he was sued in his official capacity, and we apply the three-tiered political subdivision-immunity analysis in R.C. 2744.02 in determining whether his office is immune from liability.

{¶ 17} The potential exceptions to immunity for a political subdivision involve (1) the negligent operation of a motor vehicle by an employee, 2) *the negligent performance of a proprietary function,* (3) the negligent failure to keep public roads open and in repair, (4) injury caused by a defect on the grounds of a public

building, and (5) instances in which civil liability is expressly imposed upon the subdivision by a section of the Revised Code. See R.C. 2744.02(B)(1) through (5).

{¶ 18} Appellants argue that the trial court erred in dismissing their claim in Count I alleging negligent design, planning, and construction of the pipeline based on political-subdivision immunity because, they suggest, this claim alleged the negligent performance of a proprietary function, which is an exception to political-subdivision immunity pursuant to R.C. 2744.02(B)(2). However, appellants fail to cite any authority for the proposition that the design, planning, or construction of a sewer system is a proprietary function, in violation of App.R. 16(A)(7). Moreover, appellants present no argument that the same constitutes a proprietary function, in violation of the same appellate rule. For this reason alone, appellants' argument is not well taken. In fact, this court has reached the opposite conclusion.

{¶ 19} In *Moore v. Streetsboro*, 11th Dist. No. 2008–P–0017, 2009-Ohio-6511, 2009 WL 4756421, this court noted: "Pursuant to R.C. 2744.01(C)(2)(1), '[t]he provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system' constitutes a 'governmental function' from which the city is immune. See R.C. 2744.02(A)(1)." Id. at ¶ 42. Consequently, this court held: "It is clear that the city is immune from its failure to design and construct an adequate sewer system. Thus, the Moores' arguments that the city was negligent in issuing building permits to upstream properties without designing adequate storm water runoff controls are without merit." Id. at ¶ 45.

{¶ 20} Based upon the foregoing authority, the design, planning, and construction of Portage County's storm-sewer system is a governmental function. Pursuant to R.C. 2744.01(C)(2)(*l*) and our holding in *Moore*, 2009-Ohio-6511, 2009 WL 4756421, the Portage County Engineer is immune from liability for its alleged failure to design and construct an adequate storm-sewer system.

{¶ 21} We therefore hold that the trial court did not err in dismissing with prejudice appellants' claims premised on the negligent design, planning, and construction of the county's storm-sewer system.

{¶ 22} Appellee's argument that appellants failed to allege their claim for negligent maintenance with sufficient specificity is irrelevant because appellants' first assignment of error does not address that claim.

{¶ 23} Appellants' first assignment of error is overruled.

{¶ 24} For their second assigned error, appellants contend:

{¶ 25} "The trial court committed reversible error in dismissing Plaintiffs' claims [sic] for the negligent maintenance of the pipeline without prejudice based upon Plaintiffs' failure to exhaust their administrative remedies."

■ {¶ 26} Before addressing appellants' assignment of error, we consider whether the negligent maintenance of the county's storm-sewer system is an exception to political-subdivision immunity. The Supreme Court of Ohio in *Doud v. Cincinnati* (1949), 152 Ohio St. 132, 39 O.O. 441, 87 N.E.2d 243 held:

{¶ 27} "A municipality is not obliged to construct or maintain sewers, but when it does construct or maintain them it becomes its duty to keep them in repair and free from conditions which will cause damage to private property; and in the performance of such duty the municipality is in the exercise of a * * * proprietary function and not a governmental function within the rule of municipal immunity from liability for tort. The municipality becomes liable for damages caused by its negligence in this regard in the same manner and to the same extent as a private person under the same circumstances.

{¶ 28} " * * *

{¶ 29} "The law on this subject is well stated in 38 American Jurisprudence, 341, Section 636, note 3, citing *City of Portsmouth v. Mitchell Mfg. Co.*, [113 Ohio St. 250, 148 N.E. 846], as follows:

{¶ 30} " 'The duty of a municipality to keep its sewers in repair involves the exercise of a reasonable degree of watchfulness in ascertaining their condition, from time to time, and preventing them from becoming dilapidated or obstructed. Where the obstruction or dilapidation is an ordinary result of the use of the sewer, which ought to be anticipated and could be guarded against by occasional examination and cleansing, the omission to make such examinations and to keep the sewers clear is a neglect of duty which renders the municipality liable.' " (Citations omitted.) *Doud*, 152 Ohio St. at 137–138, 39 O.O. 441, 87 N.E.2d 243.

{¶ 31} Further, in *Moore*, 2009-Ohio-6511, 2009 WL 4756421, this court stated: "Pursuant to R.C. 2744.02(B)(2), 'political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions,' unless a defense to such liability is enumerated in R.C. 2744.03." Id. at ¶ 44. This court held: "In contrast to a governmental function, a 'proprietary function' includes '[t]he maintenance, * * * operation, and upkeep of a sewer system.' R.C. 2744.01(G)(2)(d)." Id. at ¶ 43.

{¶ 32} Thus, appellants' claim that appellee was negligent in the maintenance of the county's storm-sewer system is not barred by political-subdivision immunity. In not dismissing this claim with prejudice, the trial court tacitly agreed with such holding, but found that appellants had failed to exhaust their administrative

remedies before filing such claim. We now consider appellants' argument that the trial court erred in dismissing without prejudice their negligent-maintenance claim on the ground that they had failed to exhaust their administrative remedies.

{¶ 33} Appellee argues that the trial court did not err in dismissing appellants' negligent-maintenance claim because they failed to exhaust their administrative remedies pursuant to R.C. 6137.05, which provides:

{¶ 34} "The maintenance fund created under authority of section 6137.01 of the Revised Code [for the repair, upkeep, and maintenance of county ditches] shall be subject to use of the board of county commissioners * * * for the necessary and proper repair or maintenance of any improvement constructed under sections 6131.01 to 6131.64, 6133.01 to 6133.15, and 6135.01 to 6135.27 of the Revised Code.

{¶ 35} "(A) Whenever the board, * * * from its own observation or the recommendation of the county engineer, or on the written complaint of any of the owners of lands subject to the maintenance assessment, has reason to believe the improvement is in need of repair or maintenance, it shall as a board, or by the county engineer, make an inspection of its condition, and, if it finds the need to exist, it shall make an estimate of the cost of the necessary work and material required for the purpose. If the nature of the work is such as to be done most economically * * * by force account, the board shall cause the proper work to be done by that method * * *. If the finding is that necessary repair and maintenance on an improvement * * * can be more economically * * * done by contract, the board * * * shall * * * let the contract for the required work and material to the lowest and best bidder * * *."

{¶ 36} On appeal, appellants argue that they sent three letters regarding their flooding issue to the Portage County Prosecutor in 1990, 1994, and 2009. They argue that these letters satisfied any obligation they may have had to submit a written complaint to the board of commissioners before filing suit. However, as mentioned above, our review of a ruling on a motion to dismiss a complaint does not take into account materials outside the complaint, such as appellants' letters. *Siciliano*, 2004-Ohio-1528, 2004 WL 612878. While appellants alleged generally in their complaint that they had notified appellee of the flooding issue on their property, the complaint does not reference these letters, and we therefore cannot consider them. In any event, our review of R.C. 6137.05 reveals that appellants were not required to comply with any of its provisions before filing suit.

{¶ 37} First, appellee fails to cite any authority for the proposition that a landowner must comply with R.C. 6137.05 before filing suit.

{¶ 38} Second, while a party seeking relief from an administrative decision must generally exhaust available administrative remedies before pursuing

action in court, *Dworning v. Euclid,* 119 Ohio St.3d 83, 2008-Ohio-3318, 892 N.E.2d 420, at ¶ 9, there are exceptions to the exhaustion doctrine. For example, a party is not required to pursue administrative relief first when the administrative body lacks the authority to grant the relief sought. *Gates Mills Invest. Co. v. Pepper Pike* (1978), 59 Ohio App.2d 155, 166–167, 13 O.O.3d 191, 392 N.E.2d 1316. Ohio courts recognize that the pursuit of administrative relief under such circumstances would be a vain act and therefore do not impose the exhaustion requirement. Id.

{¶ 39} In their complaint, appellants sought an award of damages to compensate them for property damage they sustained from the flooding caused by the county's water-piping system. They also sought injunctive relief. However, R.C. 6137.05 merely provides for the use of the maintenance fund by the board of county commissioners for any needed repairs to a sewer constructed pursuant to R.C. Chapters 6131, 6133, and 6135. Under this statute, the board does not have the authority to grant the relief sought by appellants in their complaint.

{¶ 40} Third, R.C. 6137.05 does not provide that a landowner must first submit a written complaint to the board regarding a necessary repair before filing suit based on the county's failure to maintain its water-piping system. This statute merely sets forth circumstances in which a board of county commissioners, if it finds the need exists, is required to repair a ditch improvement constructed pursuant to the aforementioned statutes. In any event, the complaint does not allege that the subject piping system was constructed under any of these statutes. Because we are limited to a review of the allegations of the complaint, there is no basis for us to conclude that R.C. 6137.05 applies to the instant case.

{¶ 41} Fourth, appellee argues that because the subject storm-sewer system is composed of "assessed" pipelines, appellee's responsibilities are governed by R.C. 6137.05. However, as noted above, nowhere in their complaint do appellants allege that the subject storm-sewer system is composed of assessed pipelines. We therefore reject appellee's argument that his responsibilities are limited by R.C. 6137.05. Appellee argues that the county sent appellants a letter in 1990 explaining that the ditch was an assessed ditch. However, if appellee had intended to rely on such alleged document to obtain the dismissal he seeks, it was incumbent on him to include it in the record and to file a motion for summary judgment or a motion for judgment on the pleadings, rather than a Civ.R. 12(B)(6) motion to dismiss.

{¶ 42} Next, appellee makes several arguments that are irrelevant to this assignment of error. First, he argues, "Portage County does not appear to have any legal obligation to maintain the drainage pipes at issue." He argues that while R.C. 6137.05 provides that the county can authorize maintenance to be performed, it has no obligation to perform such maintenance. First, as noted

above, there is no allegation in the complaint allowing us to conclude that R.C. 6137.05 applies in this case. However, even if it did, appellee has failed to reference any authority in support of this argument, in violation of App.R. 16(A)(7). In any event, in light of R.C. 2744.01(G)(2)(d) and our holding in *Moore*, 2009-Ohio-6511, 2009 WL 4756421, appellants' argument is not well taken. Moreover, the following provision in R.C. 6137.05 defeats appellee's argument:

{¶ 43} "The repair and maintenance on any improvement may be done in part by contract and in part by force account, *it being the duty of the board of county commissioners * * * and the county engineer to use the best and most economical methods under local conditions for the various phases of the maintenance program,* such as excavating, clearing, cleaning, snagging, physical and chemical control of land and aquatic vegetation, and repair of banks and structures." (Emphasis added.)

■ {¶ 44} Second, appellee argues that appellants' negligent-maintenance claim necessarily refers to a failure to install a larger pipeline system, which, he argues, is a governmental function. We do not agree. A failure to maintain would include a failure to inspect, clean, repair, and otherwise ensure that the installed system is operating properly. *Doud*, 152 Ohio St. 132, 39 O.O. 441, 87 N.E.2d 243. We also note that in *Moore*, 2009-Ohio-6511, 2009 WL 4756421, this court held:

{¶ 45} "If, indeed, the city is responsible for that pipeline, then 'the failure to upgrade sewers that are inadequate to service upstream property owners despite sufficient notice of the inadequacy can best be described as a failure to maintain or upkeep the sewer.' *H. Hafner & Sons Inc. v. Cincinnati Metropolitan Sewer Dist.* (1997), 118 Ohio App.3d 792, 797 [694 N.E.2d 111]; see, also, *Hedrick v. Columbus* (Mar. 30, 1993), 10th Dist. Nos. 92AP–1030 and 92AP–1031 [1993 WL 104713]. 'If proven, this failure would constitute the breach of a duty arising out of a proprietary function and would expose the city to liability under R.C. 2744.02(B)(2). * * *.' Id." *Moore*, 2009-Ohio-6511, 2009 WL 4756421, at ¶ 59.

{¶ 46} In view of the foregoing, we hold that appellants were not required to comply with any claimed requirements in R.C. 6137.05 before filing the instant action. We therefore hold that the trial court erred in dismissing their negligent-maintenance claim without prejudice on the ground that appellants had failed to exhaust their administrative remedies.

■ {¶ 47} We note that at oral argument, appellee argued for the first time that the trial court's dismissal of appellants' negligent-maintenance claim without prejudice was not a final, appealable order.

■ {¶ 48} While an involuntary dismissal without prejudice is generally not a final, appealable order, *Arner v. Andover Bank*, 11th Dist. No. 2008–A–0056,

2008-Ohio-5857, 2008 WL 4880882, at ¶ 2, "where a party's case is involuntarily dismissed by the trial court, and because of that dismissal any rights of the party are extinguished and will not be able to be reasserted in a refiled case, that party has the right to appeal the dismissal pursuant to R.C. 2505.02(B)(1) because it is '[a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment.' " *Lippus v. Lippus,* 6th Dist. No. E–07–003, 2007-Ohio-6886, 2007 WL 4464953, at ¶ 12.

{¶ 49} A dismissal without prejudice implies that the plaintiff has an *unconditional* right to refile his action within one year from the date of the dismissal or within the period of the original applicable statute of limitations, whichever occurs later. R.C. 2305.19. However, the trial court's dismissal without prejudice conditioned appellants' right to refile their negligent-maintenance claim on their exhaustion of administrative remedies. This means that before appellants can refile their action in court, they must first litigate their claim with the board of commissioners. However, as discussed above, the board does not have jurisdiction over their claim. Thus, by requiring appellants to first litigate their claim with an administrative agency that does not have jurisdiction over the matter, the trial court has unreasonably interfered with appellants' right to refile their claim in common pleas court, the only forum with jurisdiction. The court's order thus affected a substantial right in an action that in effect determines the action and prevents a judgment. R.C. 2505.02(B)(1). We therefore hold that in these circumstances, the trial court's dismissal without prejudice of appellants' negligent-maintenance claim is a final, appealable order.

{¶ 50} Appellants' second assignment of error is sustained.

{¶ 51} For their third and final assignment of error, appellants allege:

{¶ 52} "The trial court committed reversible error in dismissing Plaintiffs/Appellants [sic] claims arising prior to June 17, 2009 with prejudice."

{¶ 53} The Supreme Court of Ohio has held that "a Civ.R. 12(B)(6) motion will lie to raise the bar of the statute of limitations when the complaint shows on its face the bar of the statute." *Mills v. Whitehouse Trucking Co.* (1974), 40 Ohio St.2d 55, 58, 69 O.O.2d 350, 320 N.E.2d 668. However, "[a] Civ.R.12(B)(6) motion to dismiss based upon a statute of limitations should be granted only where the complaint conclusively shows on its face that the action is so barred." *Helman v. EPL Prolong, Inc.* (2000), 139 Ohio App.3d 231, 241, 743 N.E.2d 484, citing *Velotta v. Petronzio Landscaping, Inc.* (1982), 69 Ohio St.2d 376, 379, 23 O.O.3d 346, 433 N.E.2d 147. To conclusively show that the action is time-barred, the complaint must demonstrate "(1) the relevant statute of limitations, and (2) the absence of factors which would toll the statute * * *." *Helman.*

{¶ 54} R.C. 2744.04(A) provides: "An action against a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function * * * shall be brought within two years after the cause of action accrues * * *."

{¶ 55} In the trial court's judgment entry, the court found that "Plaintiffs' claims arising prior to June 17, 2009 are dismissed with prejudice as they are barred by the applicable statute of limitations."

{¶ 56} While appellants' position is far from clear, they appear to argue that the statute of limitations was tolled pursuant to the continuing-violation doctrine because appellee's repeated acts of negligence resulted in the continual flooding of their property. Appellee does not dispute the applicability of the continuing-violation doctrine in this context; instead, he argues that it does not apply to the facts of this case. He argues that the only act that could be negligence was the installation of the piping system sometime prior to the 1982 flood and that the subsequent floods were merely continuing effects of that original alleged act of negligence. Appellee also argued in his motion to dismiss that appellants' potential damages are limited to the 2009 flood because that is the only flood that occurred within the statute of limitations. He argued that since appellants filed their complaint on November 9, 2009, they could recover only the damages they sustained from November 9, 2007, until November 9, 2009.

{¶ 57} The Sixth Circuit in *Kuhnle Brothers, Inc. v. Geauga* (C.A.6, 1997), 103 F.3d 516, 520, held that the statute of limitations is tolled when an action arises out of continuing wrongful acts that inflict continuing and accumulating harm where those acts begin outside the statute of limitations but continue within the limitations period. In that case, Kuhnle Brothers, a trucking company, claimed that the county had violated its substantive due process rights by passing a resolution that banned through-truck traffic on a certain road. The Sixth Circuit held:

{¶ 58} "A law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within two years of its enactment. '[T]he continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations.' * * *

{¶ 59} " * * * As a result, 'a new injury was inflicted on plaintiffs each day * * *. Consequently, a new limitations period began to run each day as to that day's damage.' * * *

{¶ 60} " * * * Kuhnle suffered a new deprivation of constitutional rights every day that Resolution 91–87 remained in effect, rather than merely suffering additional harm from a prior unconstitutional act. Since the last alleged depriva-

tion occurred less than two years before Kuhnle filed its complaint, Kuhnle's action is not time-barred.

{¶ 61} "Although the fact that no one brought a legal challenge to Resolution 91–87 within two years of its enactment does not insulate the resolution from legal challenge for all time, the statute of limitations is not entirely without effect. Statutes of limitations serve two purposes: requiring plaintiffs to bring claims before evidence is likely to have grown stale; and allowing potential defendants repose when they have not been put on notice to defend within a specified period of time. * * * To allow damages for the entire period during which a law is in effect when a plaintiff challenges the law long after it was enacted would frustrate both of these purposes. Instead, just as a new injury was allegedly inflicted on Kuhnle each day that Resolution 91–87 was in effect, 'a new limitations period began to run each day as to that day's damage.' * * * Therefore, Kuhnle is entitled to recover only those damages that were caused by Resolution 91–87 on or after the date two years immediately prior to the date on which Kuhnle filed this action." (Citations omitted.) *Kuhnle,* 103 F.3d at 522–523.

{¶ 62} This court adopted the continuing-violation doctrine as announced in *Kuhnle* in *Painesville Mini Storage, Inc. v. Painesville,* 11th Dist. No. 2008–L–092, 2009-Ohio-3656, 2009 WL 2217553. In that case, the city issued a building permit to a third party that allowed construction on a tract over which the landowner had an easement to gain access to its business property. The city argued that the landowner's claim was time-barred. The landowner contended that the statute of limitations did not bar its claim, because the continuing-violation doctrine applied. This court held that the continuing-violation doctrine did not apply, because the complaint did not allege the issuance of a series of permits over an extended period of time, nor did new construction occur periodically due to separate acts by the city. The landowner's claim showed that its interests were damaged solely by one act: the issuance by the city of one building permit. Id. at ¶ 31. The landowner did not allege it was newly damaged each day after the permit was issued. This court held that because the landowner did not file an action within the applicable limitations period following the city's issuance of the permit, the landowner was now barred from seeking compensation. Id. at ¶ 34.

{¶ 63} Accepting the allegations of appellants' complaint as true and construing all inferences in their favor, as we are required to do, each flood was caused by appellee's repeated failure to maintain the sewer system. While several of these failures to act occurred outside the limitations period, at least one, which resulted in the 2009 flood, occurred within the limitations period. As a result, appellants'

negligence claim is not time-barred. However, their damages are limited to those occurring as a result of the 2009 flood.

{¶ 64} As a final note, we observe that while the trial court and the parties state that the complaint pleaded multiple claims for negligence, our review of this pleading reveals that only one such claim was pleaded. Because we hold that appellants' sole claim for damages is not time-barred, but that the damages available to them are limited to those arising within two years of the filing of this action, we construe the trial court's dismissal to be a dismissal of appellants' claim for damages but only to the extent that they occurred outside the limitations period. We therefore hold that the trial court, in its judgment entry as construed, did not err in thus limiting appellants' claim for damages.

{¶ 65} Appellants' third assignment of error is overruled.

{¶ 66} For his sole cross-assignment of error, appellee alleges:

{¶ 67} "The trial court erred by not expressly precluding any punitive damage claim in its order."

{¶ 68} While the trial court's judgment entry did not expressly dismiss appellants' prayer for punitive damages, by dismissing appellants' negligence claim, the dismissal necessarily included appellants' prayer for punitive damages. The cross assignment of error is therefore moot. We note that while R.C. 2744.05(A) provides that in an action against a political subdivision, punitive damages may not be awarded, the record reveals that appellee's counsel prepared the judgment entry, which omitted reference to punitive damages. Thus, any error of the trial court in not expressly dismissing appellants' prayer for punitive damages was either waived or invited by appellee.

{¶ 69} Appellee's cross-assignment of error is overruled.

{¶ 70} For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Portage County Court of Common Pleas is affirmed in part and reversed in part, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

GRENDELL and CANNON, JJ., concur.