# IN THE COURT OF APPEALS OF OHIO

EIGHTH APPELLATE DISTRICT
CUYAHOGA COUNTY

RICHARD BINDER, et al.,
GERALD BUTTERFIELD, et al.,

Plaintiffs-Appellees/
Cross Appellants,

v.

CUYAHOGA COUNTY,

Defendant-Appellant/
Cross/Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case Nos. 106665; 106666**

---

Civil Appeal from the
Court of Common Pleas of Cuyahoga County, Ohio
Case Nos. CV-13-801116; CV-15-851760; CV-16-863441; CV-16-864446

**BEFORE:**
Carol Ann Robb, Gene Donofrio, Cheryl L. Waite,
Judges of the Seventh District Court of Appeals, Sitting by Assignment

**JUDGMENT:**
Affirmed and Modified.

*Atty. Kevin T. Roberts*, 7622 Columbia Road, Olmsted Falls, Ohio 44138, *Atty. Joshua R. Cohen, Atty. Ellen M. Kramer*, 1 Clinton Place, Cleveland, Ohio 44113 for Plaintiffs-Appellees/ Cross Appellants and

*Atty. Michael C. O'Malley*, Prosecuting Attorney of Cuyahoga County, *Atty. Brian R. Gutkoski*, Assistant Prosecuting Attorney, The Justice Center, Courts Tower, 8th Floor, 1200 Ontario Street, Cleveland, Ohio 44113, *Atty. Robert J. Triozzi*, Cuyahoga County Department of Law, *Atty. Robin M. Wilson*, Asst. Director of Law, County Administrative Headquarters, 2079 East 9th Street, 7th Floor, Cleveland, Ohio 44115, for Defendant-Appellant/ Cross/Appellee.

Dated: April 4, 2019

---

**Robb, J.**

{¶1} Defendant-Appellant/Cross-Appellee Cuyahoga County appeals the decision of the Cuyahoga County Common Pleas Court granting class certification to Plaintiffs-Appellees/Cross-Appellants Gerald Butterfield, et al. and Richard Binder, et al. Four assignments of error are raised in the appeal. The first two concern subject matter jurisdiction and standing. Appellant contends the trial court lacked subject matter jurisdiction to decide class certification and ultimately the case because Appellees failed to exhaust administrative remedies. Appellant also asserts because Appellees failed to exhaust administrative remedies they lacked standing and the case must be dismissed. In the third and fourth assignments of error Appellant argues the trial court abused its discretion in granting certification and finding the requirements for Civ.R. 23(a) and (b) were met.

{¶2} Appellees raised a cross assignment of error concerning the issue of whether the trial court certified a class with respect to both Civ.R. 23(b)(2) and (b)(3).

{¶3} For the reasons expressed below Appellant's arguments fail. The failure to exhaust administrative remedies is an affirmative defense; it does not affect subject matter jurisdiction or standing. As to class certification, the trial court did not abuse its discretion in granting certification. This determination renders Appellees cross assignment of error moot. Consequently, the trial court's decision is affirmed. However, in affirming the decision we clarify the class definition to include only full–time non-salaried employees.

Statement of the Case

{¶4} In November 2009, the citizens of Cuyahoga County approved a new county government - a charter government. This created an elected County Executive

Case No. 17 CA 106665 and 17 CA 106666

and County Council, while at the same time disposing of some previously elected county official positions such as the elected county auditor position and the elected county treasurer position. As part of the charter government, county employees had to be reclassified into new positions. This caused some employees to be classified to lower positions and their wages to be reduced. The charter government also required employees to work a 40-hour work week, defined as an 8-hour work day that included an hour paid lunch. Previous to the charter government it appears many of the county offices worked a 35-hour work week, which included 7 hours of work and an unpaid lunch break. The change to a paid lunch hour under the new county government did not raise the employees' compensation.

**{¶5}** As a result of reclassification, changes in salary, and the change to a paid lunch hour, multiple lawsuits were filed by or on behalf of employees.

**{¶6}** This case is a consolidation of four of those lawsuits - Dolezal, Binder, Corrigan, and Butterfield. The issue in this appeal concerns the class certification granted in Binder and Butterfield. That said, a recitation of the filings in all four cases is necessary to understand the background of this case and for an understanding of the arguments and counter arguments made in this appeal.

Dolezal

**{¶7}** The Dolezal plaintiffs filed a complaint against the County in 2013 - *Dolezal, et al. v. Cuyahoga County*, case number 13-801116. 2/8/13 Complaint; 7/26/13 Amended Complaint. The plaintiffs in this case indicated it was a class action and sought a declaration that the County failed to form the charter correctly, asserted R.C. 124.34 was violated when their compensation and benefits were reduced without cause, asserted age discrimination, and asserted a claim under the Ohio Minimum Fair Wage Standard Act.

**{¶8}** Appellant filed an answer to the amended complaint; one affirmative defense asserted in the answer was the failure to exhaust administrative remedies. 9/6/13 Answer. Appellant also moved for partial judgment on the pleadings for the first two counts of the complaint alleging failure to state a claim upon which relief could be granted. 10/17/13 Motion. The Dolezal plaintiffs opposed the motion. 11/1/13 Motion. The trial court denied the motion for partial judgment on the pleadings. 4/24/14 J.E.

**{¶9}** The Dolezal plaintiffs then moved for partial summary judgment on count one and count two of the complaint and additionally moved for class certification. 12/19/14 Plaintiff Motion for Partial Summary Judgment; 12/22/14 Plaintiff Motion for Class Certification. The class certification request sought to certify as a class, "All classified employees or former employees of Cuyahoga county who since Jan. 1, 2011 suffered without cause the loss of pay, compensation, wages, salary, or benefits, including benefits linked to compensation, retirement, benefits, pension benefits, overtime benefits, exchange time, accumulated sick pay, and/or vacation time."

**{¶10}** Thereafter, the County filed its own motion for summary judgment on counts one and two of the complaint, filed a motion in opposition to Plaintiff's motion for summary judgment, and a motion opposing class certification. 3/9/15 County's Motion for Summary Judgment; 4/8/15 Motion in Opposition to Plaintiff's Motion for summary judgment; 6/5/15 Defendant's Opposition to Class Certification.

**{¶11}** Following further briefing on each of the issues, the trial court denied each party's motion for partial summary judgment and also denied the Dolezal plaintiff's request for class certification. 8/3/15 J.E. In denying the request for class certification, the court explained:

> This Court finds that it would be exceedingly difficult to join all of the alleged Plaintiffs into one unified class. Based upon the highly varying circumstances between each County employee who was incorporated into the job classification scheme, it is probable that the Court would have to address each situation on a case-by-case basis. The Plaintiffs are painting with a broad brush in their quest to join together all current and former employees who saw their compensation and benefits change since the date that the Charter took effect at the beginning of 2011. According to the County's position, this broad characterization would include County employees with vastly differing backgrounds than those already included in this action. It is not feasible to join all of the County employees who were allegedly harmed by reclassification into one cohesive group. It is unclear at this point whether Plaintiffs would benefit from consolidating into several smaller groups so that the Court could more efficiently address this action.

Case No. 17 CA 106665 and 17 CA 106666

According to Plaintiffs, this action allegedly adversely impacted individuals who had their salaries cut, others who had their jobs eliminated, those who sought administrative remedies through an appeals process, as well as individuals who exhausted the appeals process and sought further remedy in the Court of Common Pleas. Together, all of these circumstances are too widely disparate to be adjudicated in a single action.

8/3/15 J.E.

**{¶12}** This denial of class certification was not appealed.

**{¶13}** In March 2016, the parties stipulated to a dismissal with prejudice of counts three and four of the amended complaint; therefore the only counts remaining were the declaratory judgment claim and the claim that R.C. 124.34 was violated. 3/21/16 Stipulation of Dismissal. The County and the Dolezal plaintiffs then filed competing motions for summary judgment. 4/1/14 County Motion for Summary Judgment; 4/25/16 Plaintiff Dolezal's Motion in opposition to County's Motion for Summary Judgment and renewed motion for summary judgment. One of the issues raised in the County's motion was the failure of the Dolezal plaintiffs to exhaust administrative remedies.

**{¶14}** The trial court granted the motions in part and denied the motions in part. 6/7/16 J.E. It granted summary judgment to the County on count one; it found the enactment of the new charter for the new form of County Council government was done properly. The trial court granted summary judgment to the Dolezal plaintiffs on the second count finding a violation of R.C. 124.34:

Among the many reasons the voters choose to change the form of government were allegations of individuals being hired on with little or no experience, in jobs with little or no real work, at salaries well above the average salaries for similar positions. In response to that and to create transparency in its human resources functions, the County Council commissioned a study of all of its positions to make a determination of what job functions were needed, what adjustments should be made to certain positions, and that the salary ranges were appropriate for each position. The Archer Study did exactly that and provided recommendations for the County Council and many, if not all, of the recommendations were accepted

Case No. 17 CA 106665 and 17 CA 106666

and changes were made. The Plaintiffs here are alleging that those changes adversely affected them and were not done in accordance with the civil service laws and that the County Council has failed to operate within the requirements of the civil service laws.

The Plaintiffs here were hired, assigned job duties, and assigned a salary. If they were assigned a salary inconsistent with their job assignment, it was nothing done by them. Because the rights of the Plaintiffs here are not clearly defined and established by Ohio law, principles of equity should apply and a balancing of the interest of the parties will protect these employees from adverse employment action. See *Civil Serv. Pers. Asso. v. Akron*, 48 Ohio St.2d 25, 27 356 N.E.2d 300, 302 (1976). These Plaintiffs did nothing to create the problem that the new form of government has had to face and regulate. The Court finds that these Plaintiffs should have continued to receive their same rate of salary and benefits even after the transition in government and the Archer Study and finds that they were "Grandfathered" with the following limitations. If the job position of a Plaintiff was eliminated through the Archer Study, the pay should have continued at the pre-County Council rate until the date of termination of the position. The "Grandfathered" Plaintiffs would not be eligible for any pay raises unless and until their current position pay scale increases above their current rate. From the exhibits and depositions filed with the Court, many, if not most, of the Plaintiffs have received classification into positions most similar to the position held in the previous form of government.

* * *

The Plaintiffs claim that they have been underpaid since the Defendants adjusted the work week to 40 hours per week, which includes one hour of paid lunch each day. Previously, the Plaintiffs had a 35 hour work week and had a one hour lunch break that was unpaid. Defendant claims that the

Case No. 17 CA 106665 and 17 CA 106666

end result is the same since the employee is still only working 35 hours. If the employee has had 5 additional hours added to the work week with a paid lunch hour, the employee is now working 40 hours and not 35. If the pay rate has stayed the same with the addition of 5 more hours per week, the end result is a reduction in pay. The employees should be compensated for their hours and if an employer chooses to include an hour of paid lunch, the employee is to be paid for that time as well. The employees are to receive back pay from the inception of the 40-hour work week and on into the future.

6/7/16 J.E.

{¶15} In addressing the administrative remedy argument, the trial court found it lacked merit. 6/7/16 J.E. It explained that the administrative remedy created through the charter government was the Personnel Review Commission and it only deals with the prospective claims arising from the new government. That commission did not exist until the new charter was enacted. Therefore, the proper forum for claims arising from the transition to the new government is the Court of Common Pleas. 6/7/16 J.E.

{¶16} The County appealed the decision, however, it was dismissed for a lack of a final appealable order. 3/20/17 Appeal Dismissed.

{¶17} When the case returned to the Common Pleas Court's docket, a motion to consolidate Dolezal, Binder, Butterfield, and Corrigan was filed. 7/7/17 Motion. The County opposed the motion. 7/12/17 Motion.

{¶18} A hearing was held on the motion to consolidate and the trial court granted the motion. 7/25/17 J.E.

Corrigan

{¶19} In 2016, the Corrigan plaintiffs filed a complaint against Cuyahoga County - Corrigan, et al. v. Cuyahoga County, case number 16-863441. Similar to Dolezal, the Corrigan plaintiffs alleged they were unlawfully reclassified, the County reduced their compensation and benefits without cause, and their work week was extended without compensation. 5/18/16 Complaint; 6/13/16 Amended Complaint; 7/1/16 Second Amended Complaint. Part of their action was a declaratory judgment action.

Case No. 17 CA 106665 and 17 CA 106666

{¶20} In response, the County filed a motion to dismiss for lack of jurisdiction. 7/29/16 Motion. The motion to dismiss was denied. 9/19/16 J.E.

{¶21} The County then filed an answer asserting failure to exhaust administrative remedies and lack of standing as affirmative defenses. 10/19/16 Answer. The County also filed a motion for Judgment on the Pleadings. 10/31/16 County's Motion.

{¶22} Corrigan plaintiffs filed an opposition motion to the motion for Judgment on the Pleadings and also filed a motion to consolidate the case with the Dolezal, Binder, and Butterfield cases. 11/10/16 Opposition to Judgment on the Pleadings; 7/7/17 Motion to Consolidate.

{¶23} The motion to consolidate was granted 7/7/17 J.E. After consolidation, the trial court denied the motion for judgment on the pleadings. 11/16/17 J.E.

Binder

{¶24} In 2015, the Binder Plaintiffs filed a complaint – Binder, et al. v. Cuyahoga County, case number 15-851760. It was a class action complaint and the plaintiffs sought a declaration that the county charter did not authorize an increase in employees' work week from 35-hours to 40-hours without compensation, and a determination that R.C. 124.34 was violated and plaintiffs were entitled to pecuniary relief when the plaintiffs work week was increased from 35 hours to 40 hours a week without compensation. 9/28/15 Complaint; 11/7/15 Amended Complaint. It is important to note that this action did not include the reclassification claim that was raised in Dolezal and Corrigan. The issue raised in the complaint purely concerned the change from a 35 hour work week with an unpaid lunch to a 40 hour work week with a paid lunch.

{¶25} The County moved to dismiss the action for failure to state a claim and alleged there was no change in the number of hours actually worked. 11/20/15 Motion. Alternatively, the County sought to consolidate the case with Dolezal. 11/20/15 Motion. The Binder plaintiffs opposed the motion to dismiss. 12/15/15 Motion.

{¶26} The trial court granted the motion to dismiss and denied the motion to consolidate. 4/11/16 J.E. The trial court found "the change in lunch break policy was not an increase in the work week from 35 to 40 hours or a reduction in pay."

{¶27} The Binder plaintiffs appealed the decision. *Binder v. Cuyahoga County*, 8th Dist. 104399, 2016-Ohio-8305.

**{¶28}** On appeal, the County argued the appellate court lacked jurisdiction to hear the claims because the Binder plaintiffs failed to exhaust their administrative remedies. The appellate court found no merit with that argument indicating the failure to exhaust administrative remedies is an affirmative defense, it must be raised in the trial court or it is waived on appeal, and it was not raised to the trial court and thus, it was waived. *Id.* at 10. The appellate court specifically cited an Ohio Supreme Court decision for the proposition that the failure to exhaust administrative remedies is not a jurisdictional defect. *Id.* citing *Dworning v. Euclid*, 119 Ohio St.3d 83, 2008-Ohio-3318, 892 N.E.2d 420, ¶ 11.

**{¶29}** The appellate court then went on to find that the necessary parties were not joined and thus, the trial court lacked jurisdiction to determine the declaratory judgment action:

> Thus, appellants and their unnamed coworkers have a legally protectable interest in their rate of pay and in this litigation. As previously stated, "[t]he absence of a necessary party is a jurisdictional defect that precludes any declaratory judgment." *Hilroc Condo. Unitowners Assn.*, 8th Dist. Cuyahoga No. 83309, 2004–Ohio–1254, ¶ 10. Therefore, the trial court lacked authority to determine the ultimate issue in the case, i.e., whether the change in appellants' work schedules constituted a change in their rate of pay, since not all affected parties were joined in the action when the court rendered its judgment.
>
> Although appellants did not name all county employees who have a legally protected interest in their rate of pay as plaintiffs in this action, appellant's complaint seeks class certification to litigate claims on behalf of all affected employees. R.C. 2721.12 mandates the joinder of necessary parties in order to avoid the possibility of piecemeal litigation and inconsistent results. Class certification would achieve these objectives. Thus, appellants' complaint satisfies the requirements of R.C. 2721.12, unless and until class certification is denied.

*Id.* at ¶ 13-14.

**{¶30}** The court noted that there had been a request to consolidate Binder with Dolezal. *Id.* at ¶ 15. The appellate court indicated if the claims are identical in both cases, then the cases must be consolidated into a single action in order to join all necessary parties. *Id.* The trial court's judgment was reversed and remanded to the trial court to consider the claim for class certification and the request to consolidate. *Id.* at ¶ 16.

**{¶31}** Once the case was returned to the trial court's active docket, the County filed an answer asserting multiple affirmative defenses which included standing, failure to join necessary parties, failure to exhaust administrative remedies, and subject matter jurisdiction. The answer also asserted class certification fails. 5/23/17 Answer. The County filed a separate motion to dismiss for lack of subject matter jurisdiction asserting the failure to exhaust administrative remedies deprives a trial court of subject matter jurisdiction to hear a case. 5/23/17 Motion.

**{¶32}** The Binder plaintiffs filed an opposition to the motion to dismiss asserting the appellate court had already rejected any argument that the trial court lacked subject matter jurisdiction. They also asserted the Dolezal court had already determined there was not a failure to exhaust administrative remedies and had granted partial summary judgment for the Dolezal plaintiffs on the 35 to 40-hour work week. 6/9/17 Motion in opposition.

**{¶33}** The Binder plaintiffs then filed a motion to consolidate the case with the Dolezal, Butterfield, and Corrigan cases. 7/7/17 Motion to Consolidate. The County opposed the motion, but stated if any of the cases should be consolidated it should be Binder and Butterfield. 7/12/17 Motion in Opposition to Motion to Consolidate.

**{¶34}** The trial court granted the motion to consolidate all four cases. 7/25/17 J.E.

**{¶35}** After the cases were consolidated, the Binder and Butterfield plaintiffs filed a consolidated motion for class certification. Class certification was sought on the claim raised in the second count of the complaint concerning violations of R.C. 124.34. These plaintiffs argued this case was different than Dolezal where class certification was denied because the Binder and Butterfield plaintiffs only dealt with the change from a 35-hour to a 40 hour work week and did not raise any issues with reclassification. They asserted the requirements for class certification under Civ.R. 23 were met. 9/7/17 Motion to Consolidate.

Case No. 17 CA 106665 and 17 CA 106666

{¶36} The County opposed the motion for class certification asserting the class described was an impermissible "fail-safe" class. The County asserted count two of the complaint only sought damages, and was not a claim. The County argued it is impermissible to certify a class for damages only. 10/6/17 Brief in Opposition.

{¶37} The trial court granted class certification for the Butterfield and Binder plaintiffs. 11/28/17 J.E. In doing so, the court noted that it had twice before ruled plaintiffs had not failed to exhaust their administrative remedies. 11/28/17 J.E. It also found the plaintiffs met the Civ.R. 23 requirements. 11/28/17 J.E.

{¶38} The County timely appealed the class certification decision. 12/28/17 Notice of Appeal.

Butterfield

{¶39} The Butterfield plaintiffs filed a complaint against the County in 2016 – Butterfield, et al. v. Cuyahoga County, case number 16-864446. The complaint asked the court to certify a class and to declare in conformity with the Dolezal decision that the County violated R.C. 124.34 when it changed the work week from 35 hours to 40 hours without compensation. The complaint sought monetary damages for the class. 6/9/16 Complaint.

{¶40} Similar to the other cases, the County filed a motion to dismiss asserting the trial court lacked subject matter jurisdiction because the plaintiffs failed to exhaust administrative remedies and for that same reason the plaintiffs lacked standing. 8/9/16 Motion to Dismiss.

{¶41} The Butterfield plaintiffs opposed the motion. They referenced the Dolezal decision that found the failure to exhaust administrative remedies was not jurisdictional, rather it is an affirmative defense. 8/17/16 Plaintiffs Opposition to Motion to Dismiss.

{¶42} The trial court denied the motion to dismiss. 6/2/17 J.E.

{¶43} The Butterfield plaintiffs then filed a motion to consolidate the case with the Dolezal, Binder, and Corrigan. 7/7/17 Motion. The County opposed the motion to consolidate, but stated if any of the cases were to be consolidated it should be the Binder and Butterfield cases. 7/12/17 County's Response.

{¶44} The motion for consolidation was granted. 7/2/17 J.E. The Butterfield and Binder Plaintiffs then filed a joint motion for class certification. They asserted the switch

Case No. 17 CA 106665 and 17 CA 106666

from a 35-hour to a 40-hour work week was the issue in both cases and there was no reclassification issue. 9/7/17 Plaintiff Motion. The County filed a brief in opposition asserting the class definition provided by Plaintiffs was a "fail safe" class and not permissible. 10/6/17 Brief in Opposition to Class Certification.

**{¶45}** The trial court granted the motion for class certification. 11/28/17 J.E. The County appealed that determination. 12/28/17 NOA.

**{¶46}** As stated above, although this case is comprised of the consolidated cases of Dolezal, Corrigan, Binder, and Butterfield, the judgment being appealed is the trial court's decision to grant class certification in Binder and Butterfield.

First Assignment of Error

"The trial court erred by Granting Appellee's motion for class certification because it lacks subject matter jurisdiction to hear the case."

**{¶47}** The three arguments raised in this assignment of error assert the trial court lacked subject matter jurisdiction and as such, the trial court lacked authority to certify a class and should have dismissed the claims against Appellant.

**{¶48}** The Ohio Supreme Court has explained subject matter jurisdiction as the court's authority to hear the case. *State v. Mbodji*, 129 Ohio St.3d 325, 2011-Ohio-2880, 951 N.E.2d 1025, ¶ 10. "Because subject-matter jurisdiction involves a court's power to hear a case, the issue can never be waived or forfeited and may be raised at any time." *Id.*

**{¶49}** With that in mind, we turn to Appellant's arguments. Appellant asserts the trial court lacked subject matter jurisdiction because Appellees bypassed special statutory proceedings, failed to join the Personnel Review Commission and State Personnel Board of Review as necessary parties, and failed to join the Ohio Attorney General after Appellees claimed the County's Ordinance altering the work week from 35 hours to 40 hours was unconstitutional.

1. Bypass Special Statutory Proceedings

**{¶50}** Appellant contends the issue - the change in the 35-hour work week with an unpaid lunch to a 40 hour work week which included a paid lunch - should have been filed with the Personnel Review Board, which was created under the new county government, or with the State Personnel Board of Review, not the Common Pleas Court.

Case No. 17 CA 106665 and 17 CA 106666

R.C. 124.03(A)(1) indicates the State Personnel Board of Review "shall hear appeals, as provided by law, of employees in the classified state service from final decisions of appointing authorities or the director of administrative services relative to reduction in pay or position." Under the new county charter, the Personnel Review Board was the newly created administrative body to hear those appeals. Appellant also argues Appellees are using declaratory judgment to evade administrative review, which is not permissible.

{¶51} In response to this argument, Appellees assert any alleged failure to exhaust administrative remedies is an affirmative defense, not a jurisdictional defect. Also Appellees assert they are not prosecuting the lawsuit as a declaratory judgment to bypass the administrative proceedings.

{¶52} The law is clear in this matter, the failure to exhaust an administrative remedy does not deprive the trial court of subject matter jurisdiction. *Jones v. Chagrin Falls*, 77 Ohio St.3d 456, 674 N.E.2d 1388 (1997). The Ohio Supreme Court specifically stated, "The doctrine of failure to exhaust administrative remedies is not a jurisdictional defect to a declaratory judgment action; it is an affirmative defense that may be waived if not timely asserted and maintained." *Id.* at syllabus, clarifying and following *Driscoll v. Austintown Assoc.*, 42 Ohio St.2d 263, 328 N.E.2d 395 (1975). Appellant has not explained how this law does not apply to it.

{¶53} Consequently, given the law, if Appellees were required to exhaust administrative remedies, the failure to do so does not mean the trial court lacked subject matter jurisdiction to hear the case. Failure to exhaust administrative remedies is an affirmative defense and accordingly, if raised it will be addressed when the merits of the case are addressed.

{¶54} Furthermore, the subject matter jurisdiction argument has been made numerous times in the four cases and has been found to be meritless. The Eighth Appellate District in the first *Binder* appeal stated:

> However, the county failed to raise the failure to exhaust administrative
> remedies argument in the trial court. Therefore, the argument is forfeited
> on appeal. *See Dworning v. Euclid,* 119 Ohio St.3d 83, 2008–Ohio–3318,
> 892 N.E.2d 420, ¶ 11 (Failure to exhaust administrative remedies is not a
> jurisdictional defect; it is an affirmative defense that may be waived.); *See*

*also Jones v. Chagrin Falls,* 77 Ohio St.3d 456, 674 N.E.2d 1388 (1997), syllabus. Therefore, because the county failed to raise appellants' failure to exhaust their administrative remedies as a defense in the trial court, it forfeited that argument on appeal.

*Binder v. Cuyahoga Cty.*, 8th Dist. No. 104399, 2016-Ohio-8305, ¶ 10.

**{¶55}** Clearly, the appellate court indicated the failure to exhaust administrative remedies does not deprive the common pleas court of subject matter jurisdiction. If the issue had been jurisdictional, rather than making the above statement and addressing whether necessary parties were added, the appellate court would have affirmed the trial court's dismissal of the case based on the trial court's lack of subject matter jurisdiction. The appellate court, however, did not.

**{¶56}** Despite this argument being raised and rejected numerous times on the basis of the Ohio Supreme Court decision, the County continues to make the argument. It appears the County is either raising this issue to have the Ohio Supreme Court re-examine its holding in *Jones* or as a means to have the trial court's denial of the motions to dismiss based on the alleged failure to exhaust administrative remedies reviewed at this point. As an inferior court we do not have the authority to do the prior. As to the latter, the denial of the motion to dismiss, by itself, typically is not a final appealable order. The finding that Appellees were not required to exhaust administrative remedies will not be final until the trial court computes damages in the underlying case.

**{¶57}** In conclusion, Appellant's argument that the trial court lacked subject matter jurisdiction because Appellees failed to exhaust administrative remedies once again fails.

2.  Failed to join all necessary parties

**{¶58}** Next, Appellant argues Appellees failed to join all necessary parties and therefore, the trial court lacked subject matter jurisdiction. The parties Appellant specifically claims were not joined are the Personnel Review Commission (PRC) and the State Personnel Board of Review (SPBR).

**{¶59}** The PRC was created under the new charter government. Appellant claims PRC was a necessary party because it is through this administrative body Appellees should have filed their 35 to 40-hour work week reduction in pay claim. It appears

Case No. 17 CA 106665 and 17 CA 106666

Appellant is also claiming that if the PRC could not review those claims, then the SPBR could.

In *Binder I* it was specifically stated:

"A party's failure to join an interested and necessary party constitutes a jurisdictional defect that precludes the court from rendering a declaratory judgment." *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006–Ohio–954, 846 N.E.2d 478, ¶ 99, citing *Plumbers & Steamfitters Local Union 83 v. Union Local School Dist. Bd. of Edn.*, 86 Ohio St.3d 318, 323,715 N.E.2d 127 (1999). *See also Bretton Ridge Homeowners Club v. DeAngelis*, 51 Ohio App.3d 183, 555 N.E.2d 663 (8th Dist.1988); *Cerio v. Hilroc Condo. Unitowners Assn.*, 8th Dist. Cuyahoga No. 83309, 2004–Ohio–1254, ¶ 10.

Whether a nonparty is a necessary party in an action for declaratory relief depends on whether that nonparty "has a legally protectable interest in rights that are the subject matter of the action." *Rumpke Sanitary Landfill, Inc. v. Ohio*, 128 Ohio St.3d 41, 2010–Ohio–6037, 941 N.E.2d 1161, ¶ 15. A "legally protectable interest" is "'[a]n interest recognized by law.'" *Id.*, quoting Black's Law Dictionary 886 (9th Ed.2009).

*Binder I* at ¶ 11-12.

**{¶60}** The court determined the Binder plaintiffs and their unnamed coworkers had a legally protectable interest in their rate of pay and in this litigation. *Id.* at ¶ 13. However, the trial court lacked authority to determine the ultimate issue because not all affected parties were joined in the action when the trial court rendered its judgment. *Id.* The fact that the Binder plaintiffs did not name all county employees who had a legally protected interest in their rate of pay was not detrimental to their claim because the complaint sought class certification. *Id.* at ¶ 14. Thus, it determined joinder of necessary parties was achieved "unless and until class certification" was denied. *Id.* The matter was reversed and remanded to the trial court to consider class certification and to rule on the county's request for consolidation. *Id.* at ¶ 16.

**{¶61}** In *Binder I*, the appellate court could have determined PRC and/or SPBR were necessary parties and the failure to include them meant the trial court lacked

jurisdiction. However, the appellate court did not render that ruling. Instead, it determined the unnamed county employees were necessary parties. No mention was made of the two administrative bodies. If the administrative bodies were also necessary parties, that issue would have been discussed in *Binder I*.

**{¶62}** It is noted the trial court determined the PRC lacked jurisdiction over the change in the work week. Dolezal 6/7/16 J.E. It reasoned:

> The [County] asserts that the Plaintiffs' claims should be dismissed due to a failure to exhaust administrative remedies. That defense can bar claims but is not a bar to this action. "If a defendant city raises the affirmative defense of failure to exhaust administrative remedies the plaintiff must demonstrate that the administrative remedy is onerous, unduly expensive, not equally as serviceable as a declaratory judgment action, or would be a vain act. * * * The seeking of an administrative remedy would be a vain act where the administrative agency does not have authority to grant the relief requested." *Gates Mills Inv. Co. v. Pepper Pike*, 59 Ohio App.2d 155, 167, 392 N.E.2d 1316,1324 (1978).
>
> Here, the administrative remedy provided through the Personnel Review Commission can only deal with the prospective claims arising from the new government. The panel did not exist until the new Charter was enacted. These Plaintiffs' claims arise from the transition to the new government and the proper forum for such a claim is the Court of Common Pleas. There is no other potential for remedy elsewhere.

Dolezal, 6/7/16 J.E.

**{¶63}** The trial court's ruling directly addresses only whether the affirmative defense of failure to exhaust administrative remedies is viable, hence the decision does not appear to rule on the issue of necessary parties. However, given the County's argument, the necessary party argument fails. The claim raised in the complaint concerns the county's change from a 35 to-40 hour work week with a paid lunch, but with no increase in the employees' compensation. The County asserts the claims that employees were injured by the change in the work week were required to be filed with the PRC, not

Case No. 17 CA 106665 and 17 CA 106666

the common pleas court. Thus, the issue for the County is which tribunal has jurisdiction. Typically administrative agencies are not necessary parties to determine if the claim should have been brought before them, instead of the common pleas court.

**{¶64}** An agency, however, is a necessary party when the claim involves the validity of a statute and affects the powers and duties of the agency. *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 99-100 (2006). In *Portage Cty. Bd. of Commrs.*, the Ohio Supreme Court explained:

> In *Cincinnati v. Whitman* (1975), 44 Ohio St.2d 58, 73 O.O.2d 283, 337 N.E.2d 773, we examined whether a litigant needed to join the director of the EPA as a party to a suit concerning the condition of Cincinnati's drinking water. We held that "when declaratory relief is sought which involves the validity or construction of a statute and affects the powers and duties of public officers, such officers should be made parties to the action or proceeding in which the relief is sought." *Id.* at 61, 73 O.O.2d 283, 337 N.E.2d 773. In that case, the director of the EPA had the exclusive duty to investigate and enforce compliance with statutory water quality standards and, therefore, failure to join the EPA, a necessary party, deprived the trial court of jurisdiction.

> The Director of Natural Resources is charged with the exclusive duty to enforce the provisions of R.C. 1501.32, which the affected communities allege Akron has violated. See R.C. 1501.31 and 1501.32(A), (D), (F), and (G). The affected communities challenge an informal determination of ODNR on a subject under the director's exclusive authority: i.e., whether Akron needed to obtain a permit before diverting water from the Cuyahoga River. However, the affected communities failed to name ODNR as a party to this litigation. See *Whitman*, supra. Accordingly, we affirm the dismissal of the affected communities' claim that Akron violated R.C. 1501.32, because failure to join a necessary party deprived the trial court of jurisdiction to consider that claim. *Id.* at ¶ 99-100.

{¶65} There is no claim in the complaint that "affects the powers and duties" of the PRC. Thus, the case at bar is not akin to the scenario the Ohio Supreme Court described in *Portage Cty. Bd. of Commrs.* The PRC is not a necessary party in the matter at hand.

3. Constitutional Attack on PRC

{¶66} Next, the County argues the Binder and Butterfield plaintiffs attacked the constitutionality of the county ordinance that enacted the paid lunch and failed to inform the Ohio Attorney General. The Eighth Appellate District has held that the failure to notify the Ohio Attorney General extinguishes the trial court's subject matter jurisdiction. *Woods Cove III, L.L.C. v. Am. Guaranteed Mgt. Co.*, 8th Dist. Nos. 105494 and 105901, 2018-Ohio-1829, ¶ 15-16. For this reason, Appellant asserts the trial court lacked subject matter jurisdiction.

{¶67} Appellees admit the Ohio Attorney General must be served with a copy of a complaint contesting the constitutionality of an ordinance. Appellees also admit the Ohio Attorney General was not served with the complaint; however, they claim there was no need to serve the Ohio Attorney General because they do not challenge the constitutionality of the ordinance.

{¶68} Whether or not there is merit with the argument presented by Appellant depends on whether the constitutionality of the ordinance was challenged. When faced with the argument, the trial court reviewed the complaint and determined there was no constitutional challenge to the ordinance. An independent review of the complaint indicates the complaint does not expressly state Appellees are challenging the constitutionality of the ordinance. Rather, the complaint alleges the change to a paid lunch ordinance violates R.C. 124.34.

{¶69} R.C. 124.34 specifically states:

No officer or employee shall be reduced in pay or position, fined, suspended, or removed, or have the officer's or employee's longevity reduced or eliminated, except as provided in section 124.32 of the Revised Code, and for incompetency, inefficiency, unsatisfactory performance, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of any policy or work rule of the officer's or employee's appointing authority, violation of this chapter

or the rules of the director of administrative services or the commission, any other failure of good behavior, any other acts of misfeasance, malfeasance, or nonfeasance in office, or conviction of a felony while employed in the civil service.

R.C. 124.34(A).

**{¶70}** Appellant asserts Appellees' argument amounts to a constitutional challenge because Article 15, Section 10 of the Ohio Constitution states, "Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations", and that laws shall be passed providing for the enforcement of that provision. Ohio Constitution, Article XV, Section 10. Appellant argues the laws passed were codified in Revised Code Chapter 124 and thus, a claim that an ordinance violates any statute in Revised Code Chapter 124 is a claim that the ordinance is unconstitutional.

**{¶71}** This argument fails. The provision at issue does not concern appointments, promotions, or competitive examination. Appellees' position is the ordinance that changes the work week from a 35-hour work week with an unpaid lunch to a 40-hour work week with a paid lunch, but does not change the employee's rate of pay, violates R.C. 124.34. This is not a constitutional argument.

**{¶72}** Consequently, Appellee's argument fails. The constitutionality of the ordinance was not attacked. Thus, there was no requirement to notify the Ohio Attorney General.

Second Assignment of Error

"The trial court abused its discretion in granting class certification as Appellees lack standing and are precluded from seeking judicial review."

**{¶73}** Appellant admits standing and subject matter jurisdiction present different questions. Appellant contends Appellees lack standing because they did not exhaust their administrative remedies. Additionally, the County contends Appellees lack standing because their annual salaries were not reduced due to the change from unpaid to paid lunch, they are not working more hours a day than prior to being transitioned onto the

County's time keeping system, and they failed to administratively appeal their purported reduction to the PRC as required.

{¶74} These arguments can be grouped into two separate categories. The first argument is Appellees lacked standing due to the failure to exhaust administrative remedies. This argument will be addressed separately and below. The next arguments about whether the new work week added hours of work or changed the employees' salaries/rate of pay are merit arguments, not standing arguments. It appears Appellant is arguing Appellees lack standing because there is no merit with their position that altering the work week affected their pay and benefits. This is not a proper test for standing; standing is not determined by whether or not an aggrieved party's argument is meritorious. Consequently, those arguments lack merit.

{¶75} Regarding standing, the Eighth Appellate District has recently explained:

> Traditional standing principles require the plaintiff to show that she has suffered (1) an injury that is, (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief. *Moore v. Middlet*own, 133 Ohio St.3d 55, 2012–Ohio–3897, 975 N.E.2d 977, ¶ 22, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). It is not sufficient for the individual to have a general interest in the subject matter of the action. To have standing, the plaintiff must be the party who will be directly benefitted or injured by the outcome of the action. *Tate* at ¶ 12.

> The fact that a plaintiff seeks to bring a class action does not change the standing requirements. *Hamilton*, 82 Ohio St.3d at 74, 694 N.E.2d 442 (a class representative must have "proper standing"). Individual standing is a threshold requirement of all actions, including class actions. *San Allen, Inc. v. Buehrer*, 8th Dist. Cuyahoga No. 94651, 2011–Ohio–1676, ¶ 11, citing *Hamilton* at 74.

*Eighmey v. City of Cleveland*, 8th Dist. No. 104779, 2017-Ohio-7092, ¶ 19-20.

{¶76} In *Eighmey*, the city argued Eighmey lacked standing and could not legally represent the class because she failed to exhaust administrative remedies, and her

claims were barred by res judicata. *Id.* at ¶ 16. The appellate court noted that unique defenses applicable to the class representative will not destroy typicality of representation unless it is "so central to the litigation that it threatens to preoccupy the class representative to the detriment of the other class members." *Id.* citing *Hamilton v. Ohio Sav. Bank,* 82 Ohio St.3d 67, 78, 694 N.E.2d 442 (1998), quoting 5 Moore, Federal Practice, Section 23.25 [4][b][iv], at 23–126, Section 23.24[6], at 23–98. The court noted the doctrines of res judicata and failure to exhaust administrative remedies are affirmative defenses that relate to the merits of Eighmey's claims. *Eighmey* at ¶ 17, citing *Lycan v. Cleveland*, 146 Ohio St.3d 29, 2016–Ohio–422, 51 N.E.3d 593, ¶ 30 and *Dworning v. Euclid*, 119 Ohio St.3d 83, 2008–Ohio–3318, 892 N.E.2d 420, ¶ 11.

**{¶77}** Ultimately, the appellate court determined the trial court abused its discretion in certifying the class because the issue of whether Eighmey had standing would predominate the litigation if she remained the class representative:

> If Eighmey cannot receive redress from this litigation and lacks standing, she may not represent the class. The class "representative must have proper standing." *Hamilton*, 82 Ohio St.3d at 74, 694 N.E.2d 442. Cleveland's standing and res judicata defenses are threshold questions that would predominate the litigation if Eighmey remained the class representative. She therefore fails to meet the typicality requirement of Civ.R. 23, and the trial court erred in granting class certification.

*Eighmey*, 2017-Ohio-7092 at ¶ 22.

**{¶78}** Eighmey did argue that she had standing because it would have been futile to exhaust her administrative remedies. *Id.* at ¶ 23. The appellate court stated it could not address that argument because it applies to the merits of her case and only class certification was on appeal. *Id.*

**{¶79}** It is acknowledged the *Eighmey* court was not specifically determining whether the failure to exhaust administrative remedies deprives the aggrieved party of standing. Rather, the court was determining if the alleged failure to exhaust administrative remedies meant the class representative could not accurately represent the class and decided that the typicality element of class certification was not met. *Eighmey* does indicate that the lack of standing may prevent class certification. However, it also

recognizes that the standing issue may not prevent class certification. In *Eighmey*, it appears she was the only person who was alleged to lack standing. Thus, her alleged lack of standing hindered the class certification.

{¶80} Here, it appears that most, if not all, of the Binder and Butterfield plaintiffs did not exhaust their administrative remedies; Appellant states in the appellate brief only two plaintiffs filed claims with the administrative agency. Thus, in this situation the issue of failure to exhaust administrative remedies is one of the issues the trial court would be required to determine for the entire class. In this case it furthers judicial economy for the trial court to determine this issue for all class members at one time. In fact, it appears the trial court has already determined that the affirmative defense of failure to exhaust administrative remedies fails. That determination has not been appealed because the decision is interlocutory.

{¶81} It seems Appellant is trying to frame the affirmative defense of failure to exhaust an administrative remedy into a standing issue as a means of having the case dismissed. However, this attempt fails because the failure to exhaust an administrative remedy is, as explained above, an affirmative defense. Furthermore, under the basic definition of standing, it appears to be relatively clear that Appellees have standing. It is undisputed that the employees went from a 35-hour work week without a paid lunch to a 40-hour work week with a paid lunch, but their salaries/rate of pay did not increase. The fact that the salary/rate of pay did not increase is the alleged injury and all the members in the class allegedly suffered this same injury. Appellees contend they are entitled to compensation for the change in the work week. Thus, the basic requirements of standing as set forth in *Eighmey* are met. Whether the affirmative defense of failure to exhaust administrative remedies prevents Appellees from recovering damages is an issue regarding the merits that must be proven.

{¶82} This assignment of error lacks merit.

Third Assignment of Error

"The trial court abused its discretion by granting Appellees' motion for class certification for a 'Declaration' because they sought classification for their 'damages claim' only."

Case No. 17 CA 106665 and 17 CA 106666

{¶83} Appellant's argument under this assignment of error is that class certification cannot occur on count two of the complaint because it is a "damages only" count. Appellant contends certification on a "damages only" claim is not permitted.

{¶84} Appellees counter, arguing the trial court did not limit its certification to count two of the complaint, but rather certified the sole issue it regarded as dispositive, which was whether the change from the a 35-hour to a 40-hour work week affected Appellees' rate of pay and whether they suffered any financial loss from the change.

{¶85} When Appellees requested certification, they requested it on their "damages claim." The claim they labeled as the "damages claim" was count two of the complaint. In Appellees reply to Appellant's brief in opposition to class certification, Appellees explained that reference to the second count of the complaint as the "damages claim" was a shorthand identifier for the claim brought under R.C. 124.34 that protects classified civil servants from pay cuts without disciplinary cause; it was not necessarily a damages only claim.

{¶86} The trial court certified the class under Civ.R. 23(b)(2) and (3). It stated:

The initial relief requested is a declaration concerning the alteration of the work schedule, its impact upon the plaintiffs, and whether it has caused a reduction in pay. Any monetary remedy is secondary to the initial determination.

* * *

The Court certifies the Binder and Butterfield cases as a class action on the sole issue raised in those cases, the request for a declaration on the alteration of the plaintiffs' work week and whether it had any impact on their rate of pay. The class includes all employees of the County who were and are subject to alteration of their work week with the addition of a paid lunch hour each day and the change from a 35 hour work week to a 40 hour work week.

12/28/17 J.E.

Case No. 17 CA 106665 and 17 CA 106666

**{¶87}** In rendering this ruling the trial court explained that certification under Civ.R. 23(b)(2) is for injunctive or declaratory relief. It then explained that under Civ.R. 23(b)(3), it was also finding that questions of law and fact in common to the class members predominate over any questions affecting only individual members and the class action is superior to other available methods for fairly and efficiently adjudicating the controversy before it. 12/28/17 J.E.

**{¶88}** Courts have clearly stated Civ.R. 23(b)(3) certification controls actions for damages. *Unifund CCR Partners v. Piaser*, 11th Dist. No. 2017-A-0003, 2018-Ohio-2575, ¶ 65, ("Civ.R. 23(B)(3) applies where the plaintiff seeks damages and the trial court makes two findings: (1) that the questions of law or fact common to members of the class predominate over questions affecting only individual members and (2) that a class action is superior to other available methods for efficiently adjudicating the controversy."); *Safi v. Cent. Parking Sys. of Ohio, Inc.*, 2015-Ohio-5274, 45 N.E.3d 249, ¶ 18 (1st Dist.); *Konarzewski v. Ganley, Inc.*, 8th Dist. No. 92623, 2009-Ohio-5827, ¶ 32 (Action under Civ.R. 23(b)(3) is the "so-called 'damage' action.").

**{¶89}** The trial court's statements clearly indicate it was certifying the predominate issue in the case, not a count of the complaint. The predominate issue concerned the alteration of the work week and whether it had an impact on the Appellees' pay. Thus, it was not solely the remedy that was certified; rather, it certified the question of declaration/liability and damages.

**{¶90}** It is noted Appellant once again raises the exhaustion of administrative remedies argument in this assignment. As stated above, it is an affirmative defense and in a case such as this one whether or not that affirmative defense is applicable, for the sake of judicial economy, should be addressed across the entire class.

**{¶91}** Appellant also raises the piecemeal litigation nature of this case and the fact that the Dolezal plaintiffs did not appeal the trial court's denial of the class certification in the Dolezal case. The Dolezal class certification issue encompassed not only the change in the work week hours, but also reclassification. The trial court explained that it would be difficult to join all the alleged Plaintiffs into one unified class because of the reclassification issue:

This Court finds that it would be exceedingly difficult to join all of the alleged Plaintiffs into one unified class. Based upon the highly varying circumstances between each County employee who was incorporated into the job classification scheme, it is probable that the Court would have to address each situation on a case-by-case basis. The Plaintiffs are painting with a broad brush in their quest to join together all current and former employees who saw their compensation and benefits change since the date that the Charter took effect at the beginning of 2011. According to the County's position, this broad characterization would include County employees with vastly differing backgrounds than those already included in this action. It is not feasible to join all of the County employees who were alleged harmed by reclassification into one cohesive group. It is unclear at this point whether Plaintiffs would benefit from consolidating into several smaller groups so that the Court could more efficiently address this action. According to Plaintiffs, this action allegedly adversely impacted individuals who had their salaries cut, other who had their jobs eliminated, those who sought administrative remedies through an appeals process, as well as individuals who exhausted the appeals process and sought further remedy in the Court of Common Pleas. Together, all of these circumstances are too widely disparate to be adjudicated in a single action.

8/3/15 J.E.

**{¶92}** The issue and certification request in Dolezal is not the same issue and request in Binder and Butterfield. The class requested to be certified in Binder/Butterfield is different than the class named to be certified in Dolezal. Furthermore, the Eighth Appellate District in the *Binder I* appeal stated, "Therefore, we reverse the trial court's judgment and remand the case to the trial court to consider both [Binder plaintiffs'] claim for class certification and the county's request to consolidate this case with Dolezal." *Binder I*, 2016-Ohio-8305 at ¶ 16. This statement indicates the appellate court was aware of the Dolezal case. Yet, the court did not indicate the failure to appeal the Dolezal class certification denial somehow hindered class certification in Binder and Butterfield.

**{¶93}** This assignment of error is meritless.

Case No. 17 CA 106665 and 17 CA 106666

Fourth Assignment of Error

"The trial court abused its discretion by granting Appellees' motion for class certification because they failed to meet the requirements of Civ.R. 23."

**{¶94}** This assignment of error addresses the merits of the trial court's class certification decision.

**{¶95}** To be eligible for class certification pursuant to Civ.R. 23, a plaintiff must establish that (1) an identifiable and unambiguous class exists, (2) the named representative of the class is a class member, (3) the class is so numerous that joinder of all members of the class is impractical, (4) there are questions of law or fact that are common to the class ("commonality"), (5) the claims or defenses of the representative plaintiff or plaintiffs are typical of the claims and defenses of the members of the class ("typicality"), (6) the representative parties fairly and adequately protect the interests of the class ("adequacy"), and (7) one of the three requirements of Civ.R. 23(b) is satisfied. *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 125 Ohio St.3d 91, 2010–Ohio–1042, 926 N.E.2d 292, ¶ 6. *See also* Civ.R. 23(a) and (b).

**{¶96}** Failure to satisfy one of the Civ.R. 23(a) requirements is fatal to a request for class certification. *Musial Offices, Ltd. v. Cuyahoga Cty.*, 2014–Ohio–602, 8 N.E.3d 992, ¶ 19 (8th Dist.). The party seeking class certification bears the burden of demonstrating that the requirements of Civ.R. 23(a) and (b) are met. *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, ¶ 15.

**{¶97}** We review a trial court's decision to grant or deny class certification under an abuse of discretion standard of review; "[a] trial judge has broad discretion in determining whether a class action may be maintained." *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200, 509 N.E.2d 1249 (1987), syllabus. In applying an abuse of discretion standard of review to class certification determinations we give deference to "the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket." *Id.* at 201.

**{¶98}** Appellant raises many arguments as to why and how the trial court abused its discretion in granting class certification. Some of the arguments are related and will be addressed together.

1. Class Definition, Identifiable Class and Fail-Safe Class

**{¶99}** Appellant's first, second and fifth arguments under this assignment of error concern the trial court's definition of the class. Appellant contends the trial court did not define the class. Alternatively, it asserts if the class was defined, the class is unidentifiable or ambiguous and constitutes a "fail-safe" class, which is not permissible. Appellee counters arguing the trial court did define the class in terms that were identifiable and unambiguous. They also assert the definition is not a "fail-safe" class.

**{¶100}** The Ohio Rules of Civil Procedure for class certification require the trial court to define the class. Civ.R. 23(C)(1)(b) ("An order that certifies a class action shall define the class and the class claims, issues, or defenses, and shall appoint class counsel under Civ.R. 23(F)."). The trial court's order granting class certification stated:

> The Court certifies the Binder and Butterfield cases as a class action on the sole issue raised in those cases, the request for a declaration on the alteration of the plaintiffs' work week and whether it had any impact on their rate of pay. The class includes all employees of the County who were and are subject to alteration of their work week with the addition of the paid lunch hour each day and the change from a 35 hour work week to a 40 hour work week.

12/28/17 J.E.

**{¶101}** The second sentence of this statement is a class definition, while the first sentence defines the class claims/issues. Thus, the trial court defined the class.

**{¶102}** The next issue is whether the defined class is identifiable and unambiguous. As aforementioned, the Ohio Supreme Court has stated there are seven requirements to maintaining a class. *Cullen*, 2013-Ohio-4733 at ¶ 12. The first requirement is "an identifiable class must exist and the definition of the class must be unambiguous." *Id.* at ¶ 12, quoting *Stammco, L.L.C.*, 2010-Ohio-1042, at ¶ 6. It has been explained:

> "'The requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 71-72, 694 N.E.2d 442 (1998), quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,

Case No. 17 CA 106665 and 17 CA 106666

Federal Practice and Procedure, Section 1760, at 120-121 (2d Ed.1986). "The test is whether the means is specified at the time of certification to determine whether a particular individual is a member of the class." *Planned Parenthood Assn. of Cincinnati v. Project Jericho*, 52 Ohio St.3d 56, 63, 556 N.E.2d 157 (1990).

*Cantlin v. Smythe Cramer Co.*, 8th Dist. No. 106697, 2018-Ohio-4607, ¶ 16.

**{¶103}** Appellant argues the class certification definition "requires making individualized findings that are administratively infeasible in order to determine membership." The Eighth Appellate District has recently held that individualized fact-finding defeats class certification only when the cause of the problem is plaintiff's overly broad class definition. *Id.* at ¶ 19. When it is a clerical task to weed out who constitutes class members, then "individualized fact-finding" does not defeat the class definition. *See id.* at ¶ 20.

**{¶104}** Given the statements and pleadings, we hold the definition is identifiable. However, the definition needs to be clarified slightly. The definition should state that it only applies to full-time hourly employees. This clarification can be made because the pleadings and the trial court's statements indicate the request was made and granted only for employees whose work changed from 35 hours to 40 hours. It is clear this only applies to full-time employees.

**{¶105}** Likewise, the definition here only applies to non-salaried employees. These types of employees are paid on an hourly basis, unlike salaried employees. The pleadings indicate an hourly employee's overtime pay is calculated based on their rate of pay. According to the pleadings, the class was intended to include employees who are paid on the basis of hours worked and who are entitled to overtime pay or compensatory time for overtime hours. Salaried employees do not receive additional compensation for any overtime hours worked and do not receive compensation based on their hours of work.

**{¶106}** Therefore, the class definition is identifiable. However, this court pursuant to App.R. 12(1)(a) modifes the class certification to include the term "non-salaried full-time" to reflect the actual findings of the trial court:

The Court certifies the Binder and Butterfield cases as a class action on the sole issue raised in those cases, the request for a declaration on the alteration of the plaintiffs' work week and whether it had any impact on their rate of pay. The class includes all **hourly full-time** employees of the County who were and are subject to alteration of their work week with the addition of the paid lunch hour each day and the change from a 35 hour work week to a 40 hour work week.

**{¶107}** As the definition is identifiable and not overbroad, then we must determine if the class definition is a "fail-safe" class. A "fail-safe class" "is defined so that whether a person qualifies as a member depends on whether the person has a valid claim on the merits." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825-826 (7th Cir.2012). *See also Stammco, L.L.C.*, 2013-Ohio-3019. Simply put, a "fail-safe" class is "a class that cannot be defined until the case is resolved on the merits." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir.2012), citing *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir.2011). This type of class is improper "because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner* at 826.

**{¶108}** The class in the case at hand is not a fail-safe class. The definition of the class is not based on the resolution of the merits of the case. While it is true the trial court determined liability in Dolezal before the class in Binder and Butterfield were certified, liability did not need to be resolved to determine the class. The Southern District Court of Ohio has held a class somewhat similar to the one before us is not a "fail-safe" class. *Perry v. Krieger Beard Services, LLC,* S.D.Ohio No. 3:17-CV-161, 2018 WL 3218413 (July 2, 2018). In *Perry*, the plaintiffs defined the class as all technicians who worked for Krieger Beard and were not paid one-and-a-half times their regular rate of pay for all hours worked in excess of 40 per work week and/or the minimum wage for each hour worked. *Id.* The court explained this is not a fail-safe class because the facts that "define an individual as a class member are knowable without any determination of liability." *Id.* (A technician who worked over 40 hours in a week and was not paid overtime or the equivalent of a minimum wage is in the class, regardless of whether or not the technician

qualifies as an employee or is entitled to such compensation under the FLSA.). This reasoning equally applies here. The argument that the class is a "fail-safe" class fails.

{¶109} Consequently, this court concludes the class definition, as clarified, is not a "fail-safe" class, and it is identifiable and not ambiguous.

2.  Civ.R. 23(a) - Commonality

{¶110} Civ.R. 23(a) lists four prerequisites for a class member to bring a class action. They are:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

Civ. R. 23(A).

{¶111} Appellant argues the second factor, referred to as commonality, was not met because there is a lack of questions of law or facts common to the class. Appellant, once again, contends the certification is only based on damages. It asserts the Binder and Butterfield plaintiffs have different questions of law and/or fact. They assert the Butterfield plaintiffs' claim of damages relies on operations of the language of the ordinance. Prior to the change in ordinance, they were paid for 35 hours of work. With the addition of the paid lunch hour required by ordinance, now they should be compensated for 40 hours of work. This is not the fact pattern found with the *Binder* claimants. According to Appellant, the Binder plaintiffs' claim of damages relies on the fact that they were allowed to take their lunch break at the end of the day and leave work at 3:30, while they are now being required to take lunch in the middle of the day and stay at work until 4:30.

{¶112} Appellees assert Appellant mischaracterizes their arguments and draws incorrect distinctions. Furthermore, Appellees assert the class question is not based solely on damages.

Case No. 17 CA 106665 and 17 CA 106666

**{¶113}** Appellees are correct that Appellant mischaracterizes Appellees' claims. The record reveals the Binder employees, at the start of the litigation, did make a claim concerning the timing of their lunch hour once being at the end of the day, but now required to be used in the middle of the day. 9/28/15 Complaint; 11/7/15 First Amended Complaint. That claim was abandoned:

> In the Amended Complaint, the Plaintiffs allege that before the switch to a "paid" lunch employees on a 35-hour workweek could "decide[] for themselves whether to take an unpaid lunch break, and if so, how long the period would last" and when it would occur. Am. Comp., ¶23-¶24. The Plaintiffs did not present this allegation in their filing in the Eighth District, since depositions in Dolezal provide it to be inaccurate. This was a collateral aspect of the Plaintiffs' claims which they no longer assert.

6/09/17 Binder Motion in Opposition to Motion to Dismiss for Lack of Subject Matter Jurisdiction, ftnt 4.

**{¶114}** Whether their lunch was taken mid-day or at the end of the day, the Binder plaintiffs consistently have asked for a declaration that their work week was increased without compensation and this affected their benefits – vacation, overtime, and sick time. 9/28/15 Complaint; 11/7/15 First Amended Complaint. They also sought damages, based on R.C. 124.34, that their work week was increased without compensation. 9/28/15 Complaint; 11/7/15 First Amended Complaint. These are the same claims raised by the Butterfield plaintiffs. 6/9/16 Complaint.

**{¶115}** Commonality requires "a common nucleus of operative facts." *Warner v. Waste Mgt., Inc.*, 36 Ohio St.3d 91, 97, 521 N.E.2d 1091 (1988). The Tenth and Eight Appellate Districts have stated, "Commonality may be found where the basis for liability is common to the proposed class or where a common factual question exists on issues of negligence, breach of contract, illegal practice, or other applicable causes of action[.]" *Berdysz v. Boyas Excavating, Inc.*, 2017-Ohio-530, 85 N.E.3d 288, ¶ 29 (8th Dist.); *Grant v. Becton Dickinson & Co.*, 10th Dist. No. 02AP-894, 2003-Ohio-2826, ¶ 36. Likewise, in *Warner*, the Court quoted a commentator on the Federal Civil Procedure Rule for class certification who explained:

"If there is a common liability issue, [Fed.R.Civ.P.] 23(a)(2) is satisfied. Similarly if there is a common fact question relating to negligence, or the existence of a contract or its breach, or a practice of discrimination, or misrepresentation, or conspiracy, or pollution, or the existence of a particular course of conduct, the Rule is satisfied. Typically, the subdivision (a)(2) requirement is met without difficulty for the parties and very little time need be expended on it by the * * * judge."

*Id.* quoting *Miller*, An Overview of Federal Class Actions: Past, Present and Future (2 Ed.1977), at 24.

**{¶116}** Considering these statements of law and the claims raised by both the Binder and Butterfield plaintiffs, there is commonality. The trial court's classification statement clearly shows the issue raised by both set of plaintiffs – "the sole issue raised in those cases, the request for a declaration on the alteration of the plaintiffs' work week and whether it had any impact on their rate of pay." 12/28/17 J.E. The commonality argument is meritless.

3. Civ.R. 23(a) – Typicality

**{¶117}** Appellant's typicality argument is based on subsection (3) and (4) of Civ.R. 23(a) - the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class.

**{¶118}** Appellant argues the claims and defenses of the representative parties are not typical and are based on atypical legal theories. Appellant contends some individual members are now union members, some retired, some resigned, some were fired, some had a different work schedule pre-charter, some have different schedules post-charter, some had salary increase, some were decreased, some were part-time pre-charter, some are part-time post-charter, some positions were abolished, some had benefits taken away but then restored, some were entitled to overtime, and other were not entitled to overtime. Appellant contends the answer to all those individualized inquires would dictate what damages, if any, were sustained by the putative class and that indicates there is not typicality. Appellant also reasserts that the Binder plaintiffs are asserting a claim based on when they can take their lunch and the Butterfield plaintiffs do not assert this claim.

**{¶119}** Appellees counter arguing it is the same legal theory and the "when to take your lunch" argument was abandoned. As to the different working conditions, Appellees assert Appellant only offers speculation and there is no evidence in the record how the employees' respective positions conflict with each other. They contend the trial court explained typicality best by stating:

> The claims of the plaintiffs are typical as outlined above. The defenses are also the same. Either a plaintiff had the schedule altered or they did not and either it affected their pay or it did not. There are no other nuances to this issue. It is simple and direct and meets the standards for typicality.

12/28/17 J.E.

**{¶120}** "The requirement for typicality is met where there is no express conflict between the class representatives and the class." *Hamilton*, 82 Ohio St.3d at 77. The purpose of the typicality requirement of Civ.R. 23(a)(3) is to protect the interests of absent class members. *Id.* at 77-78.

**{¶121}** Claims are typical if they "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and" if the claims "are based on the same legal theory." *Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 485, 727 N.E.2d 1265 (2000). Typical does not mean "identical." *Planned Parenthood v. Project Jericho*, 52 Ohio St.3d 56, 64, 556 N.E.2d 157 (1990). "'When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.'" *Baughman* at 485, quoting 1 Newberg, Class Actions, Section 3.13, 3–74 to 3–77 (3d Ed.1992). The Ohio Supreme Court in *Baughman* explained:

> "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the

same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims."

*Baughman* at 485, quoting 1 Newberg, Class Actions, Section 3.13, at 3–74 to 3–77 (3d Ed.1992).

**{¶122}** Even disparate damages does not bar a class from certification. *Hamilton*, 82 Ohio St.3d at 81–82 ("'a trial court should not dispose of a class certification solely on the basis of disparate damages,'" particularly "where * * * damages may be calculated by a mathematical formula"); *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 232, 466 N.E.2d 875 (1984) ("[A] trial court should not dispose of a class certification solely on the basis of disparate damages."). "The fact that the losses may be different for different class members does not defeat class certification." *Kavanagh v. Caruthers*, 2017-Ohio-9406, 101 N.E.3d 1260, ¶ 25 (7th Dist.).

**{¶123}** As aforementioned, the Binder argument regarding the timing of the lunch break was clearly abandoned. Both sets of plaintiffs solely claim their work week was altered from 35 hours to 40 hours and it affected their pay and benefits. The trial court's typicality determination was correct. The trial court explained the typicality in simple terms with logical reasoning.

4. Trial court abused its discretion in granting class certification under Civ.R. 23(b)(2) when it was not requested under that section.

**{¶124}** Appellant asserts although class certification was only requested under Civ.R 23(b)(3), the trial court granted certification under Civ.R. 23(b)(2) when it stated the primary focus of the Appellees claims is a declaration of rights. Since, according to Appellant, Appellees are seeking damages and not a declaration of rights, Civ.R. 23(b)(2) class certification was inappropriate. Thus, certifying a class when it was not asked for and was not the primary relief requested was an abuse of discretion.

**{¶125}** Appellees argue the court certified the class with respect to a broad issue, not a specific count of Appellees' pleadings. That certified class issue not only addressed

Case No. 17 CA 106665 and 17 CA 106666

damages, but included Appellees' claim for declaratory relief. When the certification encompassed the declaratory judgment/liability count, the trial court certified the class under Civ.R. 23(b)(2). According to Appellees, the trial court was permitted to do this sua sponte.

**{¶126}** As aforementioned, certification under Civ.R. 23(b)(2) is for declaratory relief, while certification under Civ.R. 23(b)(3) is for actions for damages. It is undisputed in this case that Appellees did not request certification on the declaratory judgment count of the complaint; rather it requested certification on the R.C. 124.34 damages count. However, the trial court's judgment entry clearly indicates that instead of certifying the conflict on a count in the complaint, the trial court certified the class on the basis of the claims, both declaratory judgment/liability and damages. These claims are somewhat intertwined. The issue here is whether the trial court abused its discretion when it sua sponte certified the class differently than what was requested.

**{¶127}** Trial courts have broad discretion to manage class actions. *See, e.g., Hamilton*, 82 Ohio St.3d at 70, (emphasizing the trial court's broad discretion in class certification matters and noting that such discretion is "grounded ** * * in the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket."); *Marks*, 31 Ohio St.3d at 201 ("[d]ue deference must be given to the trial court's decision. A trial court which routinely handles case-management problems is in the best position to analyze the difficulties which can be anticipated in litigation of class actions. It is at the trial level that decisions as to class definition and the scope of questions to be treated as class issues should be made."). The Sixth Appellate District has reiterated the long standing principle that a certification determination is left within the sound discretion of the court. *Shaver v. Std. Oil Co.*, 68 Ohio App.3d 783, 792–93, 589 N.E.2d 1348 (6th Dist.1990) (discussing whether the trial court is required to hold a certification hearing when the trial court provides sufficient opportunity for factual development to meaningfully determine if a class should be certified). The Seventh District Court of Appeals has held a trial court does not abuse its discretion defining the class more broadly than that requested. *Hupp v. Beck Energy Corp.*, 2014-Ohio-4255, 20 N.E.3d 732, ¶ 3, 76.

Case No. 17 CA 106665 and 17 CA 106666

**{¶128}** Considering the trial court's broad discretion in determining whether to certify a class, we conclude the trial court did not abuse its discretion when it certified the class pursuant to Civ.R. 23(b)(2) and (3), even though certification was only requested under Civ.R. 23(b)(3). Given the commonality and typically of the issues raised by the Binder and Butterfield plaintiffs, the trial court acted within its discretion to certify the class on the sole issue raised by both sets of plaintiffs, which included both declaratory relief/liability and damages.

**{¶129}** For those reasons, Appellant's argument fails.

5. Civ.R. 23(b)(3) Requirements

**{¶130}** In order to have a class certified under Civ.R. 23(b)(3) the trial court must find that questions of law or fact common to the class members predominate over any questions affecting only individual members, and the class action is the superior method for fairly and efficiently adjudicating the controversy. Matters pertinent to these findings include:

(a) the class members' interests in individually controlling the prosecution or defense of separate actions;

(b) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(d) the likely difficulties in managing a class action

Civ.R. 23(b)(3).

**{¶131}** This is a non-exhaustive list, so therefore other pertinent factors may be considered. *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 111 Ohio St.3d 118, 2006-Ohio-5339, 855 N.E.2d 444, ¶ 28.

**{¶132}** It is undisputed that the trial court found common questions predominated and the class action was the superior form of adjudication. 12/28/17 J.E. Appellant,

however, contends the trial court abused its discretion in finding those factors and neither factor was met.  Each factor will be addressed separately.

a.  Common Questions

**{¶133}**  Appellant argues questions concerning the impact of the change from the 35 to 40-hour work week are outweighed by individual issues such as whether the employee exhausted his or her administrative remedies, whether the employee is a union member, whether the employee was in the classified service, etc.

**{¶134}**  Appellee counters arguing the requirements for Civ.R. 23(b)(3) are met. As to common questions, they argue there is predominance.  The claims of all Binder and Butterfield class members arose from the county ordinance that gave the employees a "paid" lunch.  This resulted in a 35-hour work week with an unpaid lunch being changed to a 40-hour work week with a paid lunch.  However, the employees' rates of pay stayed the same despite this change.  Therefore, the calculation of the employees' hourly rate decreased by 12.5 percent.  Based on those facts, according to Appellant, all class members will prevail or fail in unison.  They assert the alleged difference between employees asserted by Appellant are not found in the record and are mere speculation.

**{¶135}** Common questions of law or fact predominate when the common questions represent a significant aspect of the case and are capable of resolution for all members in a single adjudication.  *Marks*, 31 Ohio St.3d at 204; *Schmidt v. Avco Corp.*, 15 Ohio St.3d 310, 313, 473 N.E.2d 822 (1984).  Common questions, however, do not need to be dispositive of the litigation.  *Lucio v. Safe Auto Ins. Co.*, 183 Ohio App.3d 849, 2009-Ohio-4816, 919 N.E.2d 260, ¶ 17 (7th Dist.). "Where common issues predominate, the class members 'will prevail or fail in unison.'" *Cantlin*, 2016-Ohio-3174 at ¶ 22, quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460, 133 S.Ct. 1184 (2013).

**{¶136}** The focus of the inquiry in determining whether common questions predominate the action, "'is directed toward the issue of liability.'"  *Cicero v. U.S. Four, Inc.*, 10th Dist. No. 07AP-310, 2007-Ohio-6600, ¶ 38.

**{¶137}**  In this case, the common question concerning the effect of the change in the work week from 35 hour to 40 hours predominates; the focus is on liability.  The trial court's reasoning is not an abuse of discretion.

Case No. 17 CA 106665 and 17 CA 106666

<u>b. Superior Method of Adjudication</u>

**{¶138}** Appellant maintains the superior form of resolution is through the administrative process. It contends the different statuses of the employees will require the trial court to determine if the affected employee got the correct amount of leave balance, whether they have retired or separated from employment, how much they were paid, and how much they were owed. Appellant asserts these individualized determinations preclude class certification.

**{¶139}** Conversely, Appellant argues class certification is the superior form of adjudication because individual class members would realize no advantage in filing individual lawsuits; their recovery would not increase and they would have to pay for the entire litigation. Also the claims will be resolved in one suit which is adjudicative efficiency.

**{¶140}** "[I]n determining whether a class action is a superior method of adjudication, the court must make a comparative evaluation of the other procedures available to determine whether a class action is sufficiently effective to justify the expenditure of judicial time and energy involved therein." *Schmidt*, 15 Ohio St.3d at 313. The superiority criterion is satisfied where "the efficiency and economy of common adjudication outweigh the difficulties and complexity of individual treatment of class members claims." *Warner*, 36 Ohio St.3d at 96. Class certification should be granted where "[r]epetitious adjudication of liability, utilizing the same evidence over and over, could be avoided." *Marks*, 31 Ohio St.3d at 204.

**{¶141}** Whether or not Appellees exhausted their administrative remedies is an affirmative defense. That is not an issue for class certification or for the determination of what is the superior form of adjudication.

**{¶142}** Appellant seems to suggest that since the amount of damages for each individual may be different, this fact prevents class certification. However, case law indicates different amounts of damages do not necessarily prevent a trial court from certifying a class:

> While potential dissimilarity in remedies is a factor to be considered in determining whether individual questions predominate over common questions, that alone does not prevent a trial court from certifying a cause

as a class action. It is fundamental here that each member of the class may not be awarded the same amount of damages in the event appellants are found liable. Nevertheless, the key fact is that the injuries sustained by the class flow from identical operative facts * * *.

(Internal citations omitted). *Vinci v. American Can Co.*, 9 Ohio St.3d 98, 101-102, 459 N.E.2d 507 (1984).

**{¶143}** Here, there are identical operative facts about the change in the work week and therefore, although there may be different dollar amounts of recovery for various employees that does not mean class certification cannot occur. Determining damages for each individual would be a clerical/mathematical determination. For instance, the amount of compensatory time paid out would be clerical, the amount of sick time paid out would be clerical, the differences in the pay rates would be clerical, etc.

**{¶144}** Therefore, Appellant's common question and superior method of resolution arguments fail.

6. Injury-in-Fact

**{¶145}** The last argument is that there is no injury in fact because the employees are still reporting to work. Appellant once again focuses on Appellees failure to administratively appeal the change in the work week. Appellant asserts only one or two plaintiffs have appealed administratively and those plaintiffs did not appeal any determination to the common pleas court.

**{¶146}** This argument is a regurgitation of the previously made arguments and for that reason alone fails.

**{¶147}** Furthermore, Appellant many times throughout the brief requests this court to look at the merits of the case and asserts there is no injury because these Appellees are still receiving the same amount of pay for 7 hours of work. That issue, however, is a merit issue and is not something typically addressed in determining whether a class should have been certified. "Class action certification does not go to the merits of the action." *Ojalvo*, 12 Ohio St.3d at 233.

**{¶148}** Deciding whether a claimant meets the burden for class certification pursuant to Civ.R. 23 does require the court to consider what will have to be proved at

trial and whether those matters can be presented by common proof. *State ex rel. Huttman v. Parma*, 2016-Ohio-5624, 70 N.E.3d 1074, ¶ 27 (8th Dist.), citing 7AA Wright, Miller & Kane, Federal Practice and Procedure, Section 1785 (3d Ed.2005). If a requirement for class certification and a merit issue overlap, the court is permitted to examine the underlying merits of the claim as part of its rigorous analysis, but only to the extent necessary to determine whether the requirement of the rule is satisfied. *Id.*, citing *Wal– Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541 (2011).

**{¶149}** The exception is not the situation before us. Whether the administrative remedy prevails is an affirmative defense. Admittedly, because of the procedural history of this case, there is a merit determination in Dolezal and a portion of that decision could equally apply to Appellees. However, that determination is not yet a final order.

**{¶150}** For those reasons, the injury in fact argument fails.

7. Conclusion

**{¶151}** In conclusion, the fourth assignment of error lacks merit.

Appellees' Cross Assignment of Error

"The trial court abused its discretion by failing to certify a class under Civ.R 23(B)(3) in connection with the Appellees' claim for damages."

**{¶152}** Appellees contend the trial court failed to certify the class under Civ.R. 23(b)(3) even though it found the requirements in Civ.R. 23(b)(3) were met.

**{¶153}** Appellant asserts the cross assignment was not adequately briefed and it is difficult to decipher what Appellees are arguing. Thus, it contends we should disregard the cross assignment of error. Additionally, Appellant argues the theory of damages for this claim does not exist at law and Appellees cannot prove through common evidence that all class members were in fact injured by the change in the work week. This argument addresses the elements of Civ.R. 23(b)(3) and are the same arguments raised in the appellate brief in the fourth assignment of error. Appellant also argues the trial court abused its discretion in certifying a class on the declaratory action count of the complaint when Appellees did not request certification on that issue.

**{¶154}** Given our resolution of Appellant's assignments of error, the cross assignment of error is moot. As indicated above, the trial court's judgment entry indicates it certified the class under Civ.R. 23(b)(2) and (b)(3). Heading E of the judgment entry

Case No. 17 CA 106665 and 17 CA 106666

specifically states, "**Certification under Rule 23(b)(2) and (3)**." 12/28/17 J.E. Within that section, the trial court discusses (b)(3) and holds those requirements are met. It then certifies the class with the following definition:

> The Court certifies the Binder and Butterfield cases as a class action on the sole issue raised in those cases, the request for a declaration on the alteration of the plaintiffs' work week and whether it had any impact on their rate of pay. The class includes all employees of the County who were and are subject to alteration of their work week with the addition of the paid lunch hour each day and the change from a 35-hour work week to a 40-hour work week.

12/28/17 J.E.

Conclusion

**{¶155}** In conclusion, the trial court's decision is affirmed and the class definition is modified. Appellant's subject matter and standing arguments lack merit. As to whether the requirements of Civ.R. 23 were met, the trial court did not abuse its discretion in granting class certification. However, we do modify the class definition to reflect the language that the class only is composed of hourly full-time employees. As such the certified class is defined as follows:

> The Court certifies the Binder and Butterfield cases as a class action on the sole issue raised in those cases, the request for a declaration on the alteration of the plaintiffs' work week and whether it had any impact on their rate of pay. The class includes all non-salaried full-time employees of the County who were and are subject to alteration of their work week with the addition of the paid lunch hour each day and the change from a 35-hour work week to a 40-hour work week.

Donofrio, J., concurs.

Waite, P.J., concurs.

Case No. 17 CA 106665 and 17 CA 106666

[Cite as *Binder v. Cuyahoga Cty.*, 2019-Ohio-1236.]

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Cuyahoga County, Ohio, is affirmed and the class definition is modified.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**